**Joe David CHILDRESS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–92–00037–CR.**

Court of Appeals of Texas, Houston (1st Dist.).

Dec. 17, 1992.

Austin 1992, writ requested).

George McCall Secrest, Jr., Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., Carol M. Cameron, Julian Ramirez, Asst. Dist. Attys., Houston, for appellee.

Before SAM BASS, COHEN and DUNN, JJ.

## OPINION

SAM BASS, Justice.

Appellant, Childress, was convicted for failure to stop and render aid. The judge found the enhancement paragraphs true and sentenced appellant to 25–years confinement. Appellant's points of error all involve the enhancement paragraphs.

We affirm.

Childress was arrested in February 1986 after the vehicle he was driving struck and killed a pedestrian and he failed to return to render aid. He was found guilty by a jury and sentenced to 60 years. This Court reversed the punishment phase and remanded for a new punishment hearing. *Childress v. State*, 756 S.W.2d 11, 14 (Tex. App.—Houston [1st Dist.] 1988), *rev'd*, 784 S.W.2d 361 (Tex.Crim.App.1990). The Court of Criminal Appeals reversed and remanded to this Court for consideration of the other points of error. *Childress v. State*, 784 S.W.2d 361, 366 (Tex.Crim.App. 1990). On remand, this Court again reversed and remanded to the trial court for a new punishment hearing.

At the second punishment hearing, appellant urged a motion to quash the enhancement paragraphs asserting he had been denied the right to counsel when he pled guilty to the felonies that were used for enhancement. Appellant testified he had no counsel present when he made the deals with the prosecutor, the appointed attorneys were in court only when the pleas were taken, and he had not been informed of his constitutional rights to confront his

accusers and to remain silent. Appellant offered the testimony of an attorney, John Cutler, who had been practicing law in Harris County at the time of his second conviction. Cutler corroborated appellant's testimony by outlining the practice at that time for handling noncapital felonies in the criminal courts. The trial judge denied the motion to quash, stating counsel had been present even though assistance had been minimal. The judge suggested the minimal assistance met the standard set out in *Strickland v. Washington,* 466 U.S. 668, 693, 104 S.Ct. 2052, 2067, 80 L.Ed.2d 674 (1984), found the enhancement paragraphs true, and sentenced appellant to 25 years.

Appellant raises six points of error attacking the enhancement paragraphs. Points of error one and three attack enhancement paragraphs one and two, respectively, on the basis that appellant was denied his right to counsel guaranteed by the sixth and fourteenth amendments of the U.S. Constitution. Points two and four challenge the paragraphs under article 1, section 10 of the Texas Constitution. Points five and six assert he was not admonished regarding his right against self-incrimination, right to trial by jury, and right to confront his accusers, in violation of the fifth, sixth, and fourteenth amendments of the U.S. Constitution.

■ The only evidence presented in support of appellant's contention that he was denied the right to counsel was his own testimony. Cutler testified relative to the custom of the period, but could not address what actually took place in regards to appellant. The judgment for each prior conviction states appellant was represented by counsel. The recitations in the judgment "are binding in the absence of direct proof of their falsity." *Breazeale v. State,* 683 S.W.2d 446, 450 (Tex.Crim.App.1984).

Appellant cites *Ex parte Lemay,* 525 S.W.2d 1 (Tex.Crim.App.1975), and *Ex parte Morse,* 591 S.W.2d 904 (Tex.Crim. App.1980), for the proposition that a conviction cannot be used for enhancement if the defendant was not represented by counsel at the time of the conviction. In both of those cases, the docket sheet was in evidence, corroborating the petitioners' testimony that counsel was "appointed on jury waiver." *Morse,* 591 S.W.2d at 905; *Lemay,* 525 S.W.2d at 3. The Court of Criminal Appeals stated:

Testimony of the petitioner, if uncorroborated, would be insufficient to overcome the presumption of the validity of the recitations in the judgment.

. . . .

... [T]he statement on the docket sheet sufficiently corroborates petitioner's testimony and overcomes the recitations of the form judgment.

*Lemay,* 525 S.W.2d at 3.

■ In *Burgett v. Texas,* 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967), also cited by appellant, the record stated on its face that the defendant was not represented by counsel. In the instant case, the record indicates appellant was represented by counsel, and there is insufficient evidence presented to rebut the presumption of validity of the recitation. The burden of proof to bring the full record is on the party attacking the validity of the conviction. *West v. State,* 720 S.W.2d 511, 519 (Tex.Crim.App.1986), *cert. denied,* 481 U.S. 1072, 107 S.Ct. 2470, 95 L.Ed.2d 878 (1987). Appellant has not carried his burden.

Appellant's points of error one through four are overruled.

■ Points of error five and six attack the enhancement paragraphs on the basis that appellant was not admonished about his constitutional rights prior to entering a plea of guilty, citing *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). In *Boykin,* the United States Supreme Court held a guilty plea, like a confession, requires "an affirmative showing that it was intelligent and voluntary." 395 U.S. at 242, 89 S.Ct. at 1711. The Court, quoting *Carnley v. Cochran,* 369 U.S. 506, 516, 82 S.Ct. 884, 890, 8 L.Ed.2d 70 (1962), stated "[p]resuming waiver from a silent record is impermissible." *Id.* In the instant case, the record is not silent regarding the admonishments given to appellant. Both judgments state appellant "was admonished by the Court of the consequences

of his plea, and Defendant persisted in pleading guilty." There is no evidence in the record other than appellant's testimony to rebut the judgment recitations. Appellant's testimony alone is insufficient to disprove the judgment recitations. *Haines v. State*, 623 S.W.2d 367, 373 (Tex.Crim.App. 1981); *Lemay*, 525 S.W.2d at 3.

Appellant's points of error five and six are overruled.

The judgment is affirmed.

COHEN, J., dissents.

COHEN, Justice, dissenting.

This is a close case. As the majority states, no docket sheet states counsel was appointed solely to waive a jury, as in *Ex parte Morse*, 591 S.W.2d 904, 905 (Tex. Crim.App.1980), and *Ex parte Lemay*, 525 S.W.2d 1, 3 (Tex.Crim.App.1975). Thus, the docket sheets do not corroborate appellant's claims that his lawyers were appointed only moments before he pled guilty, after he had made plea bargains with the prosecutors, and that their sole function was to help him waive a jury. The testimony of appellant and Mr. Cutler, however, shows that what happened in *Morse* and *Lemay* was similar to what happened here. The trial judge, of course, did not have to believe appellant or Mr. Cutler, but the record shows he did. I interpret the trial judge's statements to mean that he found the testimony of appellant and his expert witness, John Cutler, to be true because it was consistent with the judge's own experience as a Harris County prosecutor in the 1970's, when the similar practices were still being followed.

The trial judge was the Honorable Lupe Salinas, a former assistant district attorney for Harris County. After hearing testimony by appellant and Mr. Cutler, Judge Salinas stated:

> THE COURT: —I will go ahead and basically state with regards to the Motion to Quash the Enhancement Paragraphs that basically what I have heard is the claim, the assertion that in 1946 and 1948 the practice in Harris County, Texas, was for individuals charged with

a non-capital offense to engage in plea discussions with the accused even if the accused did not have counsel at that time. The Court also has to relate, and y'all tell me if it's appropriate or inappropriate to take judicial notice of the Court's knowledge of other well established practices that might shed some light on the credibility of that 1946, '48 practice. And that is in the early seventies, to wit, 1974 or 75, that practice was still common insofar as misdemeanors were concerned because I as a prosecutor engaged in such activities on behalf of the Harris County District Attorney's Office. So to the extent that that practice was common, it, to me, lends more credibility to the assertion that it was common in 1946 through '48 insofar as felony—non-capital felonies were concerned. Further, to find and conclude from the evidence that a plea bargain would be arranged on the day of the plea, that the defendant would stand before the judge, and that someone such as one of the Heisingfelders would stand in or Mr. Cutler perhaps in later years, would stand in and basically determine whether or not the defendant wanted to withdraw from the plea and that's about as much as I can gather was occurring. But that was the extent of the "right to counsel" quote, unquote, that was occurring in 1946 through 1948 from all indications. And unless counsel for either side wants to point out other things for the Court to consider, that's basically what I've picked up as to what occurred in those years.

> MR. SECREST: That's an accurate picture. That's an accurate picture.

> THE COURT: And either side has the opportunity to say that I've maybe gone too far or not or whatever. Okay. Based on that background that I have in my mind, based upon the evidence that I heard, what case the defense—as far as what the Court should do with regards to this motion.

> . . . .

> THE COURT: Well, evidence as I have found it, indicates that Mr. Childress had counsel, a lawyer that appeared with him

at that time. He has helped clear up any question about that.

. . . .

THE COURT: The question is, as no doubt he would state, is whether or not that counsel meets the right to counsel standard.

. . . .

THE COURT: That's not—I don't know what Mr. Ramirez'[1] position might be, but I have no basis or no avenue for quarreling with what I heard. I don't know if Mr. Ramirez has any basis to impeach what has been heard. Assuming that all of that is correct, that you have a potted plant approach, but an individual who was there and basically is on the spot at that point to listen to the judge, ask questions, and determine whether or not the individual facts are going to plead guilty, is that sufficient exercise of one's right to counsel under the circumstances?

. . . .

THE COURT: I'm going to proceed to do the following and that is take not only the evidence that I heard here, but my understanding of other aspects of law, specifically the standard set forth in— you might find it a little bit twisted, but I look at the stand with Washington and I'm looking at the conduct of counsel back in '46, '47, and '48 and what the judges perhaps were making them do. Standing in and providing certain assistance which was almost, from what I gathered, none or little or—

MR. SECREST: None.

THE COURT: —or just stand there and basically—Do you want me to tell the judge that you don't want to go through with the plea, if I heard Mr. Cutler's version correctly and that's about it? Strickland (v. Washington) set a standard that's pretty flexible and ineffective counsel will not be found unless something really really horrible occurs the way I read it and yet while the practice was perhaps not a good one, it was a

bad one, it was a—the question there was Mr. Childress still had an opportunity to back out. I wasn't—I mean, he may have been right in the middle and it may not be practical or an effective approach to try to get out of a plea that he struck with the District Attorney. It is very, very minimal and you would argue that it's none. I will have to find here that's it's very minimal assistance of counsel. I will deny your Motion to Quash the Enhancement Paragraphs, not at all clearly comfortable with it, but, nevertheless, that's why I say, looking at this stand in some other aspect of the law, and then the fact that counsel was there and available at least from what I gather to maybe urge the Court to back out or to allow the defendant to back out from the plea or not enter into the plea, and that under these circumstances, the Court finds based upon the pleas of not true and the evidence considered herein, finds it true. . . .

Even though no docket sheets corroborated appellant's testimony, the judge's comments show he believed appellant and Mr. Cutler.

Texas law in 1946 and 1948, when appellant was convicted, did not require an attorney to be appointed for the entire trial. *Ex parte Lemay*, 525 S.W.2d at 3. Article 10a of the 1925 Code of Criminal Procedure required that counsel be appointed before a defendant could waive a jury when pleading guilty to a felony. *Id.* This resembled the requirement of counsel to help a defendant apply for a suspended sentence. *Id.* As the *Lemay* court stated, "The trial court apparently complied with the law at the time of trial." *Id.* As in *Lemay*, I presume the judge who heard appellant's cases in 1946 and 1948 complied with the law then in effect, a law that predated *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), and that required no more than what happened in *Lemay*, in *Morse*, in the experience of John Cutler from 1947 forward, and in the expe-

---

1. Mr. Ramirez represented the State at the hearing on appellant's motion to quash the enhancement paragraphs.

rience of Judge Salinas himself in misdemeanor cases as late as 1974.

The level of representation in such cases was, to say the least, minimal, as described by Mr. Cutler:

Q: Make sure that the record is clear. When lawyers would be appointed without pay, and asked to stand in order to take pleas would these lawyers as a general custom, I'm talking about would they basically stand in and take the plea or actually be counsel, would they conduct independent investigations?

A: Well, many times you didn't have—you did it all at the same time. You didn't—You weren't appointed—I might walk in the courtroom and the defendant is sitting at the table, judge appoints me to represent him and he's standing up and talk to him a few—maybe a minute or two, and he would—the plea would be taken at that time.

Q: So in those circumstances back here in the late forties, was it a situation where you as a lawyer would not have an opportunity to basically investigate a case? Is that a fair statement from time to time?

A: Well, we did—we did investigate—we didn't investigate a case because the judge was maybe taking a plea, right, you know, appoint you at that time. Now, if we pled not guilty, you had time to prepare a case. Might not get to be appointed very much if you did that many times.

Q: But, if you pled guilty, it's my understanding that then the case would proceed to a plea shortly thereafter?

A: Oh, yes.

Q: Okay. So the normal kind of things that we envision lawyers to do, that is to talk strategy with a client, discuss facts of the case with a client, research the law, conduct a [sic] independent investigation, that didn't take place did it in those kinds of cases?

A: No.

Q: So basically—Were you basically a potted plant, just—

A: Well, I don't know about being a potted plant, but we—I would talk to the defendant and ask him if he wanted to plea—

Q: Sure.

A: —guilty and if he did, well, I asked him what they offered him and he would say so and so and so and I'd say, well, is that satisfactory with you, and we would go on with the plea.

Q: Okay.

A: Sometimes it wasn't and sometimes they would reset.

This case is like *Morse* and *Lemay* in that an indigent defendant without counsel agreed to plead guilty after talking only with a prosecutor, and counsel was then appointed to comply with the statutory requirement of counsel's presence when waiving a jury. The evidence shows appellant received no advice from counsel regarding the facts of his case or any possible defenses. Unlike *Morse*, there is no evidence that appellant was "not informed of his right to trial by jury, his right to appeal, the consequences of a guilty plea or the range of punishment." *Morse*, 591 S.W.2d at 905. There are also differences between this case and *Lemay*, 525 S.W.2d at 2 (neither the judge nor appointed counsel advised the indigent defendant that he had a right to appeal or a right to court-appointed counsel on appeal and appellant did not knowingly waive appeal). But, as in those cases, the appointed attorney here "merely signed the jury waiver and departed." *Morse*, 591 S.W.2d at 905.

Appellant testified as follows:

Q: So what happened is the District Attorney comes there?

A: He comes and speak through the speaker and let them into the run around out in the alley out there between the windows and the cellblock.

Q: Okay. When you had whatever preliminary discussions when you had an Assistant District Attorney, did you have counsel present?

A: No.

Q: Can you—Did you cut a deal with the prosecutor at that time?

A: Yes.

Q: Okay. Then what would happen later? How would you get to court or how would that take place?

A: Well, when you went to court you'd be put in a holdover down there.

Q: Okay.

A: And the attorneys come up and talk to you and tell you he's appointed by the judge to be the attorney in this case.

Q: Okay. Let me stop you here because I want to make sure we understand what's happening. When an attorney was finally appointed was there—was he appointed the very day that you entered a plea? In other words—

A: Yes, sir.

Q: —you didn't have an attorney at the jail when you cut your deal with the prosecutor, did you?

A: No, sir.

Q: Okay. Then sometime later you ended up in court to take a plea to put into place the plea bargain that you cut by yourself with the prosecutor?

A: That's right.

    . . . .

Q: When was the first time that you'd see an attorney in this whole process?

A: A few minutes before it was taken before the judge.

Q: Okay. When you saw this attorney, did the attorney discuss with you available defenses?

A: No, sir.

Q: In fact, did you even have an opportunity to discuss with the lawyer what the facts of the case were about?

A: No, sir.

Q: Okay. Basically what would you tell the lawyer?

A: Well, it was the other way around, he was telling us.

Q: All right. What would he tell you as a general rule?

A: That he had been appointed to the case and he understood that we had made a deal with the prosecutor for whatever it was. He named it, and it was two years in each case before two different judges.

Q: Okay. All right.

A: And we went in front of the judge and the judge was going to ask us if we were pleading guilty because we were guilty or because of any threats or promises.

Q: Okay.

A: And when he did that, we were to answer yes, did we understand it, and that was it.

Q: Did the lawyer that was appointed on the day that you took the plea, did he do any investigation?

A: Not to my knowledge.

Q: Okay. Did he—Did he ever really sit down and discuss what the facts of the case were about?

A: No, sir.

    . . . .

Q: Whatever defenses that might have been available, was there ever any discussion about that?

A: No, sir.

Q: Okay. Did the lawyer ever plea bargain on your behalf? Did he try to sweeten up a deal or he just effectuated what you had cut?

A: He did what I had agreed on.

Q: Okay. Now specifically in reference to, again on the first enhancement paragraph, Cause No. 56193, were you informed by anyone that you had a constitutional right to confront your accusers?

A: No, sir.

Q: Were you informed by anybody that you had a constitutional right to remain silent?

A: No, sir.

Q: Okay. Now what was your understanding as to why back in 1946 that a lawyer stood up with you for however brief a period of time it was, why he was there in the first place?

A: I have no idea. I was 17 years old, I really didn't know.

The trial judge denied relief because he concluded, based on *Strickland v. Washington*, 466 U.S. 668, 693, 104 S.Ct. 2052, 2067, 80 L.Ed.2d 674 (1984), that even though counsel was deficient, appellant did not show that, but for counsel's deficiency, the result of the preceding may have been different. That is the correct legal standard when a defendant attacks his counsel for rendering ineffective assistance. I do not think that standard applies here, however. This case is more like a denial of counsel. Texas law at the time of appellant's convictions required counsel only for the limited purpose of executing a jury waiver, and the uncontradicted evidence, taken as true by Judge Salinas, shows appellant did not have counsel for any other purpose. In my opinion, appellant's complaint is not that his lawyer was bad, but that he was absent, except to help execute a jury waiver. I would hold that this case is governed not by *Strickland v. Washington*, but by *Gideon v. Wainwright*. Because the record shows Judge Salinas believed appellant and Mr. Cutler, appellant is entitled to relief just as in *Lemay* and in *Morse*. *See Tucker v. Day*, 969 F.2d 155, 159 (5th Cir.1992) (attorney's failure to provide any assistance was a constructive denial of counsel that is legally presumed to result in prejudice).

*Gideon v. Wainwright* is the most important criminal law decision ever made by the United States Supreme Court. I believe its importance is diminished by refusing to apply it to facts like these. Thus, I would hold that the judge erred in overruling the motion to quash the enhancement paragraphs, set aside the sentence, and remand the cause for yet another punishment hearing.