UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 95-20865
_____

JOE DAVID CHILDRESS,

Petitioner-Appellant,

versus

GARY L. JOHNSON, DIRECTOR,
TEXAS DEPARTMENT OF CRIMINAL JUSTICE,
INSTITUTIONAL DIVISION,

Respondent-Appellee.

_____

Appeal from the United States District Court for the
Southern District of Texas
_____

January 10, 1997

Before HIGGINBOTHAM, DUHÉ, and BENAVIDES, Circuit Judges.

BENAVIDES, Circuit Judge:

Joe David Childress appeals the district court's denial of his petition for a writ of habeas corpus. Childress is serving a term of twenty-five years in Texas state prison for leaving the scene of an accident. He challenges the severity of his sentence, arguing that his prison term was unconstitutionally enhanced based on two burglary convictions secured in the late 1940s in violation of his Sixth Amendment right to counsel. These convictions preceded by many years the Supreme Court's recognition that defendants in state felony cases have the federal constitutional

right to the assistance of counsel at all critical stages of the prosecution.

Childress does not contend that he was entirely without an attorney during his 1946 and 1948 plea hearings, nor that counsel's performance was ineffective within the meaning of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). He claims instead that he received no meaningful assistance at all from his court-appointed lawyer, and thus was constructively denied his Sixth Amendment right to counsel. *See United States v. Cronic,* 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984). Consequently, Childress maintains that the use of these prior convictions to enhance his current sentence was unconstitutional.

### BACKGROUND

Childress was arrested in February 1986 after the pick-up truck he was driving struck and killed a pedestrian, Guiditta Mafrica Serrano. Childress was convicted of failure to stop and render aid and was sentenced to twenty-five years' imprisonment.[1]

At the time of the accident and of sentencing, failure to stop and render aid was an offense under article 6701d of the Texas Revised Civil Statutes, which provided for a maximum prison term of five years.[2] However, under Section 12.41(1) of the Texas Penal

---

[1]Sentence was imposed on January 3, 1992, and was affirmed by the state court of appeals. *Childress v. State*, 845 S.W.2d 377 (Tex. App.-Houston [1st Dist.] 1992, *rev. denied*). For a summary of the procedural history of the case, *see id.* at 378.

[2]*See* TEX. REV. CIV. STAT. ANN. art. 6701d, §§ 38, 40 (Vernon 1977) (current version codified at TEX. TRANSP. CODE ANN. §§ 550.021,

Code, the offense was classified as a third-degree felony and was therefore subject to sentence enhancement based on prior felony convictions. *See* TEX. PENAL CODE ANN. §§ 12.41(1), 12.42 (Vernon 1974 & Supp. 1994). *See also Platter v. State*, 600 S.W.2d 803, 805 (Tex. Crim. App. 1980) (explaining that under Texas Penal Code § 12.41(1), failure to remain at the scene of a motor vehicle accident is deemed a third-degree felony and thus is subject to sentence enhancement under § 12.42). Under Section 12.42(d), a defendant's third felony conviction is punishable by a minimum prison term of twenty-five years.

The indictment in this case alleged that Childress had been convicted of two previous felony burglary offenses in Harris County, Texas, in 1946 and 1948. Childress pleaded "not true" to these allegations and moved to quash the enhancement paragraphs. He did not dispute that he had been convicted, on pleas of guilty, of the two alleged prior offenses. Rather, he claimed that these convictions violated his right to the assistance of defense counsel, and that consequently their use for enhancement purposes was unconstitutional.[3]

---

550.023 (Vernon 1996)).

[3]The record indicates that Childress also was convicted of burglary in 1957 and aggravated assault in 1980. However, the enhancement paragraphs of the indictment alleged only his 1946 and 1948 burglary convictions. Under well established Texas law, prior convictions must be alleged in the indictment in order to be used to enhance the defendant's sentence. *See, e.g.*, *Briggs v. Procunier*, 764 F.2d 368, 371 (5th Cir. 1985); *Bell v. State*, 387 S.W.2d 411, 413 (Tex. Crim. App. 1965), *aff'd sub nom. Spencer v. Texas*, 385 U.S. 554, 87 S.Ct. 648, 17 L.Ed.2d 606 (1967); *Moore v. State*, 227 S.W.2d 219, 221 (Tex. Crim. App. 1950). We have recognized this Texas requirement in determining that the use of an

At his sentencing hearing on January 3, 1992, Childress testified that he had agreed to plead guilty in 1946 and again in 1948 as the result of uncounseled plea negotiations with the prosecutor in each case. Childress, who was an indigent defendant, conceded that a court-appointed lawyer was assigned to him at the 1946 and 1948 plea hearings. However, Childress also testified -- and the state court accepted as true -- that counsel's sole duty was to execute a waiver of appellant's right to jury trial. Counsel never investigated the facts, never discussed the applicable law with Childress, and never advised him of the rights he would surrender by pleading guilty. Childress claims that as a consequence of his lack of legal representation, he was unaware of his rights to remain silent and to confront his accusers. Indeed, he stated that at the time, he had no idea why a lawyer was appointed to stand with him in court during the jury waiver and plea proceedings.

Childress's description of his plea hearings was corroborated in general terms by a witness, attorney John Cutler, who began practicing criminal defense law in Harris County in 1947. Cutler explained that before a non-capital felony defendant was permitted to plead guilty, state law required the appointment of counsel for the purpose of waiving the defendant's right to jury trial. *See*

invalid conviction cannot be considered harmless error, even if other unalleged convictions may have been proven. *McGee v. Estelle*, 732 F.2d 447, 449-51 (5th Cir. 1984); *Bullard v. Estelle*, 665 F.2d 1347, 1366 n.36 (5th Cir. 1982), *vacated on other grounds*, 459 U.S. 1139, 103 S.Ct. 776, 74 L.Ed.2d 987 (1983)). This may explain why the state has not asserted that even if Childress's 1946 and 1948 convictions were invalid, the error was harmless.

Act of April 9, 1931, 42nd Leg., ch. 43, § 1, 1931 Tex. Gen. Laws 65 (current version at TEX. CRIM. PROC. CODE ANN. art. 1.13 (Vernon 1977 & Supp. 1996)). Beyond that, Cutler testified, assigned counsel would stand by in case his services were required by the court.

According to Cutler's uncontroverted testimony, counsel typically was assigned "a minute or two" before the plea was taken.[4] The lawyer assigned to the defendant thus had little, if

---

[4]Cutler's testimony recounted the standard practice in the Harris County criminal courts in the 1940s:

> Q:   Are you aware of a practice where a defendant might cut a deal by himself unrepresented and cut this deal with the prosecutor and then come into court in order to take the plea? A lawyer would be basically appointed just to stand in at that point in time to waive trial by jury and to take a plea in front of a judge?
>
> A:   Yes. The lawyers didn't get paid either.
>
> ***
>
> Q.   When lawyers would be appointed without pay, and asked to stand in order to take pleas would these lawyers as a general custom, I'm talking about would they basically stand in and take the plea or actually be counsel, would they conduct independent investigations?
>
> A.   Well, many times you didn't have -- you did it all at the same time. . . . I might walk in the courtroom and the defendant is sitting at the table, judge appoints me to represent him and he's standing up and talks to him a few -- maybe a minute or two, and he would -- the plea would be taken at that time.
>
> ***
>
> Q.   So the normal kind of things that we envision lawyers to do, that is to talk strategy with a client, discuss facts of the case with a client, research the law, conduct an independent investigation, that didn't take place did it in those kinds of cases?

any, opportunity to perform the investigative, counseling, and advocacy functions typically required and expected of defense counsel. Nonetheless, counsel usually had time to confer with the defendant in order to confirm that the defendant was prepared to plead guilty.

The trial court credited Childress's and Cutler's testimony. The court was convinced that the lawyer "standing in" for Childress at the 1946 and 1948 plea hearings provided "little or no[]" assistance. The court found that the sole function of assigned counsel in these cases was to help Childress waive his right to jury trial.[5] The trial court, proceeding on the assumption that Childress sought to establish an ineffective assistance claim, found that Childress had received "very very minimal" assistance of counsel at the plea hearings. Nevertheless, the court found that Childress had not been denied the effective assistance of counsel within the meaning of *Strickland*. Although the trial judge expressed misgivings about his decision, he denied Childress's motion to quash, found the enhancement paragraphs "true," and imposed the minimum enhanced sentence of twenty-five years.

After exhausting his state remedies, Childress filed a petition for writ of habeas corpus in the district court. Childress raised three grounds for habeas relief. First, he asserted that he was not informed of the constitutional rights he

A. No.

[5]The trial judge found this testimony consistent with his own experience as a Harris County prosecutor in the early 1970s, when a similar procedure was followed in misdemeanor cases.

6

would waive by pleading guilty, including his right to confront his accusers and his privilege against self-incrimination. Second, he claimed that his rights were violated when the prosecutor met with him to negotiate plea terms before defense counsel was assigned. Third, he claimed that "[c]ounsel was not appointed to fully represent or defend the accused at all critical stages of the proceedings."

The district court rejected all three claims. First, relying on the documentary record of the 1946 and 1948 cases, the court found that the trial court in each case admonished Childress of the consequences of a guilty plea. Second, the district court stated that under *Trahan v. Estelle*, 544 F.2d 1305 (5th Cir. 1977), Childress had no right to counsel during plea negotiations. Finally, the district court found that Childress was represented by counsel at the plea hearings and failed to show that counsel was ineffective within the meaning of *Strickland*. The court did not address appellant's contention that his right to counsel was constructively denied.

A judge of this court granted a certificate of probable cause to appeal, vesting this court with jurisdiction. We focus primarily on Childress's third claim.

In considering a claim for federal habeas relief, we review the district court's factual findings for clear error and its legal conclusions *de novo*. *Trest v. Whitley*, 94 F.3d 1005, 1007 (5th Cir. 1996). The ultimate question in this appeal -- whether appellant's right to counsel was constructively denied -- is a

7

mixed question of law and fact, subject to *de novo* review. *Cf. Strickland*, 466 U.S. at 698, 104 S.Ct. at 2070 (explaining that ineffectiveness of counsel is a mixed question of a law and fact).

## **DISCUSSION**

On April 24, 1996, President Clinton signed into law the Antiterrorism and Effective Death Penalty Act of 1996. Pub. L. No. 104-132, 110 Stat. 1214 (1996) (codified at 28 U.S.C. §§ 2241-2266). Title I of the Act significantly amended Chapter 153 of Title 28 of the United States Code, which authorizes the federal courts to grant the writ of habeas corpus. *See generally Felker v. Turpin*, --- U.S. ---, 116 S.Ct. 2333, 2335, 135 L.Ed.2d 827 (1996). In particular, the Act altered the legal standard for granting habeas relief to state prisoners based upon violations of their federal constitutional rights. *See* 28 U.S.C. § 2254(d). We have held that this section took effect immediately and is fully applicable to appeals, such as this one, that were pending when the statute became law. *Mata v. Johnson*, 99 F.3d 1261 (5th Cir. 1996); *see also Drinkard v. Johnson*, 97 F.3d 751 (5th Cir. 1996).

The new Section 2254(d) provides:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

8

There is no suggestion in appellant's habeas petition that the state courts made an unreasonable determination of the facts. *Cf.* 28 U.S.C. § 2254(d)(2). Consequently, this appeal is governed by Section 2254(d)(1). To prevail, Childress must show that the state courts' resolution of his constitutional claim was "contrary to" or "involved an unreasonable application of" Supreme Court precedent.

We have held that "a reasonable, good faith application of Supreme Court precedent will immunize the state court conviction from federal habeas reversal . . . ." *Mata*, 99 F.3d at 1268. There can be no such immunization here, however, for the simple reason that in adjudicating appellant's Sixth Amendment claim, the state courts entirely failed to apply the law pertaining to constructive denial of the right to counsel. Rather, the state courts fastened on (and rejected) the argument that Childress received the ineffective assistance of counsel.[6] That is a very different argument, and one on which Childress has not relied.

In these circumstances, we find it most useful to inquire whether the state courts' resolution of appellant's Sixth Amendment claim was "contrary to" federal law as clearly established by decisions of the Supreme Court. We note that appellant's claim is premised on several of the Court's best-known decisions in the field of constitutional criminal procedure. As discussed more

---

[6]The dissenter on the state court of appeals recognized that appellant was raising a constructive denial claim. He remarked, "[A]ppellant's complaint is not that his lawyer was bad, but that he was absent, except to help execute a jury waiver." 845 S.W.2d at 384 (Cohen , J., dissenting). The majority did not respond to this observation.

fully below, appellant claims that he had the right to counsel at all critical stages of his 1946 and 1948 prosecutions for burglary; that the plea hearings were critical stages; that he was constructively denied the right to counsel at those hearings; that a constructive denial of counsel is prejudicial *per se*; and that a conviction secured in violation of the accused's right to counsel cannot be used to enhance his punishment for a subsequent offense. *See Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) (right to counsel in state felony prosecutions); *Mempa v. Rhay*, 389 U.S. 128, 134, 88 S.Ct. 254, 257, 19 L.Ed.2d 336 (1967) (right to counsel at all critical stages); *Hamilton v. Alabama*, 368 U.S. 52, 54, 82 S.Ct. 157, 158-59, 7 L.Ed.2d 114 (1961) (state proceeding where plea is entered is a critical stage); *White v. Maryland*, 373 U.S. 59, 60, 83 S.Ct. 1050, 1051, 10 L.Ed.2d 193 (1963) (same); *Strickland*, 466 U.S. at 692, 104 S.Ct. at 2067 (citing *Cronic*, 466 U.S. at 659 and n.25, 104 S.Ct. at 2046-47 and n.25) (prejudice is presumed where right to counsel is constructively denied); *Burgett v. Texas*, 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967) (forbidding use of uncounseled convictions for sentence enhancement in subsequent criminal cases).

State Court Fact Findings

The recently amended habeas statute sets out the following standard for federal court review of state court factual findings:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.

10

28 U.S.C. § 2254(e)(1). This section appears to retain the traditional presumption of correctness afforded to state court factual determinations. As the prior case law firmly established, federal courts are "require[d] . . . to show a high measure of deference to the fact findings made by the state courts." *Sumner v. Mata*, 455 U.S. 591, 598, 102 S.Ct. 1303, 1307, 71 L.Ed.2d 480 (1982) (construing former Section 2254(d)).[7] In this case, the state court's factual findings are not in dispute. Because they are pivotal to our determination of this appeal, we review them in some detail.

The state trial court made findings regarding the general conduct of plea hearings in Harris County in the late 1940s and the particular circumstances surrounding appellant's convictions.

The court found that generally, prosecutors in non-capital cases engaged in plea discussions with defendants who were not represented by counsel. Plea bargains were typically reached on the day of the plea hearing. At the hearing itself, court-appointed counsel "would stand in and basically determine whether or not the defendant wanted to withdraw from the plea" agreement. Assigned counsel waived the defendants' right to jury trial and remained in the courtroom while the plea was taken. As the state court remarked from the bench, "[T]hat was the extent of the 'right to counsel' quote, unquote, that was occurring in 1946 through 1948

---

[7]While the measure of deference afforded state court factual findings is substantial, we note that it is not absolute. Section 2254(d)(2) authorizes issuance of the writ if the state court decision "was based on an unreasonable determination of the facts in light of the evidence presented."

11

from all indications."

The court found that when Childress pleaded guilty in the two burglary cases, a lawyer was assigned to appear in court at his side. In the absence of any evidence contravening appellant's and Cutler's testimony, however, the court concluded that counsel took "a potted plant approach" to Childress's representation. That is, counsel's role was essentially passive. He was "on the spot at that point to listen to the judge, ask questions, and determine whether or not" the defendant wanted to plead guilty.

We understand the state court to have determined that counsel (1) ascertained whether Childress wished to plead guilty; (2) executed the waiver of jury trial; and (3) stood by in case the court required further assistance during the plea hearing. The court found this assistance to be "very very minimal," but sufficient to satisfy *Strickland*.

The factual determinations summarized here were undisturbed by the state appellate courts and are unchallenged in the briefs before this court.[8] With these findings in mind, we turn to the constitutional principles that control this appeal.

The Sixth Amendment Right to Assistance of Defense Counsel

The Sixth Amendment in part provides, "In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." The Sixth Amendment right

---

[8]The court of appeals presumed the regularity of the state court records, which reflect that Childress appeared in court with counsel. 845 S.W.2d at 379. The physical presence of counsel does not, of course, dispose of the constructive denial claim.

to defense counsel in felony prosecutions is a fundamental right, binding on the states through the Fourteenth Amendment. *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). Moreover, the right to counsel in state felony prosecutions is retroactive, so that a defendant's pre-*Gideon* conviction secured in violation of that right cannot be used to enhance his sentence in a subsequent criminal case. *Burgett v. Texas*, 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967). As the Supreme Court explained:

> To permit a conviction obtained in violation of *Gideon v. Wainwright* to be used against a person either to support guilt or enhance punishment for another offense . . . is to erode the principle of that case. Worse yet, since the defect in the prior conviction was denial of the right to counsel, the accused in effect suffers anew from the deprivation of that Sixth Amendment right.

*Burgett*, 389 U.S. at 115, 88 S.Ct. at 262 (internal citation omitted). *See also Webster v. Estelle*, 505 F.2d 926, 928 (5th Cir. 1974), *cert. denied*, 421 U.S. 918, 95 S.Ct. 1581, 43 L.Ed.2d 785 (1975).

Many of the cases describing the parameters of the right to counsel focus on the criminal trial, which has been called the "main event" in the adjudication of guilt or innocence. *Cf. McFarland v. Scott*, 512 U.S. 849, ---, 114 S.Ct. 2568, 2574, 129 L.Ed.2d 666 (1994). Nevertheless, the right to counsel is not limited to the trial itself. A defendant has the constitutional right to the assistance of counsel at every "critical stage" of the proceedings against him, or whenever his "substantial rights . . . may be affected." *Mempa v. Rhay*, 389 U.S. 128, 134, 88 S.Ct. 254, 257, 19 L.Ed.2d 336 (1967).

13

Notwithstanding *Trahan*,[9] neither the Supreme Court nor this circuit has suggested that counsel may be dispensed with throughout the entire plea process. To the contrary, the Supreme Court has held that a plea hearing is a critical stage of the prosecution, at which the right to counsel is constitutionally guaranteed. *See Hamilton v. Alabama*, 368 U.S. 52, 54, 82 S.Ct. 157, 158-59, 7 L.Ed.2d 114 (1961); *White v. Maryland*, 373 U.S. 59, 60, 83 S.Ct. 1050, 1051, 10 L.Ed.2d 193 (1963).

In repeatedly applying the Supreme Court's teaching, we have stated that "one of the most precious applications of the Sixth Amendment may well be in affording counsel to advise a defendant concerning whether he should enter a guilty plea." *Reed v. United States*, 354 F.2d 227, 229 (5th Cir. 1965), *cited in Davis v. United States*, 376 F.2d 535, 537 (5th Cir. 1967). *See also Goodwin v. Smith*, 439 F.2d 1180, 1182 (5th Cir. 1971); *Davis v. Holman*, 354 F.2d 773, 775-76 (5th Cir. 1965), *cert. denied*, 384 U.S. 907, 86 S.Ct. 1343, 16 L.Ed.2d 359 (1966); *Harvey v. Mississippi*, 340 F.2d 263, 269 (5th Cir. 1965). "It is clear that a defendant is entitled to the effective assistance of counsel in determining how to plead and in making his plea, and can attack his conviction collaterally if he is not given this right." *Colson v. Smith*, 438 F.2d 1075, 1078 (5th Cir. 1971)(citations omitted).

---

[9]In *Trahan*, the defendant pleaded guilty after an uncounseled negotiation with the prosecutor. We perceived no Sixth Amendment violation because the defendant "pleaded guilty with at least some advice from court appointed counsel." 544 F.2d at 1309. *Trahan* thus differs essentially from this case, in which Childress contends that he received no legal advice or assistance.

14

The Supreme Court has noted:

> Representation of a criminal defendant entails certain basic duties. . . . [These include] the overarching duty to advocate the defendant's cause and the more particular duties to consult with the defendant on important decisions and to keep the defendant informed of important developments in the course of the prosecution.

*Strickland*, 466 U.S. at 688, 104 S.Ct. at 2065. The Sixth Amendment imposes these duties on counsel representing the accused at a plea hearing, as well as at trial. Even when the accused intends to plead guilty, "counsel still must render competent service." *Herring v. Estelle*, 491 F.2d 125, 128 (5th Cir. 1974). We explained:

> It is the lawyer's duty to ascertain if the plea is entered voluntarily and knowingly. <u>He must actually and substantially assist his client in deciding whether to plead guilty</u>. It is his job to provide the accused an understanding of the law in relation to the facts. The advice he gives need not be perfect, but it must be reasonably competent. His advice should permit the accused to make an informed and conscious choice. In other words, if the quality of counsel's service falls below a certain minimum level, the client's guilty plea cannot be knowing and voluntary because it will not represent an informed choice. And a lawyer who is not familiar with the facts and law relevant to his client's case cannot meet that required minimal level.

*Id.* at 128 (citations, footnote and internal quotation marks omitted) (emphasis added).

A defendant thus is constitutionally entitled to the active assistance of counsel at a plea hearing in a state felony prosecution. If that right is denied, the ensuing conviction may not be used to enhance his sentence in a subsequent prosecution. *Burgett*, 389 U.S. at 115, 88 S.Ct. at 262.

One more Sixth Amendment principle is especially salient in

15

the context of this appeal:  "The Constitution's guarantee of assistance of counsel cannot be satisfied by mere formal appointment."  *Avery v. Alabama*, 308 U.S. 444, 446, 60 S.Ct. 321, 322, 84 L.Ed. 377 (1940), *cited in Tucker v. Day*, 969 F.2d 155, 159 (5th Cir. 1992).  As the Supreme Court has stated:

> That a person who happens to be a lawyer is present at trial alongside the accused . . . is not enough to satisfy the constitutional command.  The Sixth Amendment recognizes the right to the assistance of counsel because it envisions counsel's playing a role that is critical to the ability of the adversarial system to produce just results.

*Strickland*, 466 U.S. at 685, 104 S.Ct. at 2063.[10]  As the Court further observed in *Cronic*, "[A]lthough counsel is present, the performance of counsel may be so inadequate that, in effect, no assistance of counsel is provided."  *Cronic*, 466 U.S. at 654 n.11, 104 S.Ct. at 2044 n. 11, *quoted in Tucker*, 969 F.2d at 159 (additional citations and internal quotation marks omitted).

In sum, the right to the assistance of counsel for one's defense -- at a plea hearing, as at any critical stage -- encompasses the right to have an advocate for one's cause.[11]

### Constructive Denial and Ineffective Assistance

The state courts and the district court held that Childress

---

[10]The Court, parsing the text of the Sixth Amendment, has observed: "If no actual 'Assistance' 'for' the accused's 'defence' is provided, then the constitutional guarantee has been violated." *Cronic*, 466 U.S. at 654, 104 S.Ct. at 2044 (footnote omitted).

[11]In a pair of cases that preceded *Strickland* and *Cronic*, the Texas Court of Criminal Appeals held that the defendants' Sixth Amendment rights were violated by the appointment of counsel for the sole purpose of executing a waiver of the right to jury trial. *See Ex parte Morse*, 591 S.W.2d 904 (Tex. Crim. App. 1980); *Ex parte Lemay*, 525 S.W.2d 1 (Tex. Crim. App. 1975).

16

failed to show that he received the ineffective assistance of counsel, as the term is defined in *Strickland*. In this court, the state emphasizes that Childress failed to plead, let alone prove, that he was prejudiced as a result of counsel's unprofessional errors, as *Strickland* demands. This argument misconceives the nature of Childress's claim. Childress does not argue that he had a bad lawyer in the 1946 and 1948 proceedings, but that he had none at all, except for the purpose of waiving a jury trial.

The Supreme Court has dispensed with the *Strickland* prejudice inquiry in cases of actual or constructive denial of counsel. As the Court has explained, "There are . . . circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified." *Cronic,* 466 U.S. at 658, 104 S.Ct. at 2046 (footnote omitted). In *Strickland* itself, the Court added that:

> In certain Sixth Amendment contexts, prejudice is presumed. Actual or constructive denial of the assistance of counsel altogether is legally presumed to result in prejudice. See *United States v. Cronic*, 466 U.S., at 659, and n.25, 104 S.Ct., at 2046-2047, and n.25. Prejudice in these circumstances is so likely that case-by-case inquiry into prejudice is not worth the cost. 466 U.S., at 659, 104 S.Ct., at 2047. Moreover, such circumstances involve impairments of the Sixth Amendment right that are easy to identify and, for that reason and because the prosecution is directly responsible, easy for the government to prevent.

466 U.S. at 692, 104 S.Ct. at 2067.

The Court further explained that a constructive denial of counsel occurs when the defendant is deprived of "the guiding hand of counsel." *Powell v. Alabama*, 287 U.S. 45, 69, 53 S.Ct. 55, 64, 77 L.Ed. 158 (1932), *cited in Cronic,* 466 U.S. at 660-61, 104 S.Ct.

17

at 2047-48. This brand of Sixth Amendment violation has occurred in cases involving the absence of counsel from the courtroom, conflicts of interest between defense counsel and the defendant, and official interference with the defense. *See Cronic*, 466 U.S. at 659 and nn.25 & 31, 104 S.Ct. at 2047 and nn.25 & 31. In addition, constructive denial will be found when counsel fails "to subject the prosecution's case to meaningful adversarial testing . . . ." *Id.* at 659, 104 S.Ct. at 2047. Accordingly, when the defendant can establish that counsel was not merely incompetent but inert, prejudice will be presumed.

The vast majority of Sixth Amendment right to counsel claims can be analyzed satisfactorily under the two-pronged performance and prejudice test of *Strickland*. The federal courts of appeal, including this one, have repeatedly emphasized that constructive denial of counsel as described in *Cronic* affords only a narrow exception to the requirement that prejudice be proved.

> A constructive denial of counsel occurs . . . in only a very narrow spectrum of cases where the circumstances leading to counsel's ineffectiveness are so egregious that the defendant was in effect denied any meaningful assistance at all.

*Craker v. McCotter*, 805 F.2d 538, 542 (5th Cir. 1986) (internal quotation marks and citations omitted). *Accord Toomey v. Bunnell*, 898 F.2d 741, 744 n.2 (9th Cir. 1990) (*Cronic* presumption is applied "very sparingly"). We have insisted that the convicted criminal prove ineffective assistance according to the *Strickland* standard in cases where defense counsel investigated certain issues but not others; where counsel's trial preparation was "somewhat

18

casual"; where counsel failed to pursue a challenge based on racial bias in jury selection; and where counsel failed to object to a variation between the indictment and the jury charge. *See Woodard v. Collins*, 898 F.2d 1027, 1029 (5th Cir. 1990); *McInerney v. Puckett*, 919 F.2d 350 (5th Cir. 1990); *Harris v. Johnson*, 81 F.3d 535 (5th Cir.), *cert. denied*, ---U.S.---, 116 S.Ct. 1863, 134 L.Ed.2d 961 (1996); *Ricalday v. Procunier*, 736 F.2d 203 (5th Cir. 1984). In the context of a guilty plea hearing, we refused to presume prejudice in *Craker*. Although defense counsel was appointed only minutes before the defendant pleaded guilty, his law partner had investigated the case, and counsel explained the plea agreement to the defendant and discussed the defendant's options with him. We concluded that Craker had received some meaningful assistance, and that there was no constructive denial of counsel. *Craker*, 805 F.2d at 543.

These holdings are sound because in each case, the defendant complained of counsel's errors, omissions, or strategic blunders in the context of an active adversarial representation. We found in each case that the because the defendant received some meaningful assistance, it was necessary to prove prejudice. In essence, we have consistently distinguished shoddy representation from no defense at all. As we explained in *McInerney*, "bad lawyering, regardless of *how* bad, does not support the [*per se*] presumption" of prejudice under *Cronic*. 919 F.2d at 353.

Other federal circuits applying *Strickland* and *Cronic* have joined us in distinguishing ineffectiveness claims from

19

constructive denial claims. The cases establish that a constructive denial of counsel occurs when a criminal defendant must navigate a critical stage of the proceedings against him without the aid of "an attorney dedicated to the protection of his client's rights under our adversarial system of justice." *United States v. Swanson*, 943 F.2d 1070, 1075 (9th Cir. 1991).

In *Swanson*, the Ninth Circuit observed that *Strickland* applied to cases in which counsel's "errors or omissions occurred during an inept attempt to present a defense," or where defense counsel "engaged in an unsuccessful tactical maneuver that was intended to assist the defendant in obtaining a favorable ruling." *Id.* at 1073. In contrast, the *Swanson* court held that *Cronic*'s presumption of prejudice applied when counsel committed "not merely a negligent misstep in an attempt to champion his client's cause[, but . . .] an abandonment of the defense of his client at a critical stage of the criminal proceedings.[12] *Id.* at 1074.

The First Circuit further illuminated the boundary between constructive denial and ineffective assistance of counsel in *Scarpa v. Dubois*, 38 F.3d 1 (1st Cir. 1994), *cert. denied*, ---U.S.---, 115 S.Ct. 940, 130 L.Ed.2d 885 (1995). The court emphasized that a defense lawyer's "maladroit performance," as distinguished from

---

[12]While gleaning insight from *Swanson*'s statement of Sixth Amendment principles, we do not necessarily endorse its finding of a constructive denial of counsel. Defense counsel in *Swanson* failed to call witnesses and conceded in his closing argument that the evidence of his client's guilt was overwhelming. These appear to be trial errors amenable to *Strickland* analysis. *See Scarpa v. Dubois*, 38 F.3d 1, 12 (1st Cir. 1994) (criticizing *Swanson*), *cert. denied*, ---U.S.---, 115 S.Ct. 940, 130 L.Ed.2d 885 (1995).

20

"non-performance," required an inquiry into actual prejudice under *Strickland*. *Id.* at 15. Drawing an analogy to harmless error analysis, the court distinguished "trial errors" from "structural errors." Trial errors must be analyzed in the particular circumstances of each case to determine whether prejudice resulted. In contrast, structural errors so undermine confidence in the fairness and reliability of the proceedings that prejudice is presumed. *Id.*[13]

As these cases indicate, a critical question in assessing a Sixth Amendment right to counsel claim is whether the accused asserts that he received incompetent counsel, or none at all. Childress claims the latter. His petition does not tell the story of courtroom "pratfalls" by a hapless defense lawyer advocating his cause, however maladroitly. *Cf. Scarpa*, 38 F.3d at 11. Rather, he complains that counsel provided no meaningful assistance whatsoever, except with respect to the waiver of jury trial.

Silent Counsel and Standby Counsel

Two of our precedents applying *Cronic* strongly support Childress's claim that a defense attorney who does not participate

---

[13]Other circuits have found a constructive denial of Sixth Amendment rights when counsel slept for extended periods at trial, *Tippins v. Walker*, 77 F.3d 682, 685 (2d Cir. 1996); failed to object to a directed verdict against the defendant, *Harding v. Davis*, 878 F.2d 1341 (11th Cir. 1989); deliberately stressed the brutality of his client's crime, *Osborn v. Shillinger*, 861 F.2d 612, 628-29 (10th Cir. 1988); was absent during cross-examination of an important government witness by counsel for a co-defendant, *Green v. Arn*, 809 F.2d 1257 (6th Cir.), *vacated on other grounds*, 484 U.S. 806, 108 S.Ct. 52, 98 L.Ed.2d 17 (1987), *reinstated*, 839 F.2d 300 (1988), *cert. denied*, 488 U.S. 1034, 109 S.Ct. 847, 102 L.Ed.2d 979 (1989); and was absent when the verdict was returned, *Siverson v. O'Leary*, 764 F.2d 1208, 1217 (7th Cir. 1985).

in a critical phase of the proceedings falls short of the constitutional standard.

We found a constructive denial of the right to counsel in *Tucker,* 969 F.2d at 159. In that case, the transcript of the petitioner's resentencing hearing indicated that counsel remained silent throughout. Tucker alleged that the transcript was incomplete, that he had asked aloud at one point, "Do I have counsel here?" and that counsel had responded, "Oh, I am just standing in for this one." *Id.* Tucker alleged that his appointed counsel acted as a "mere spectator," and we agreed. We noted:

> Tucker was unaware of the presence of counsel, counsel did not confer with Tucker whatsoever, and as far as the transcript is concerned, counsel made no attempt to represent his client's interests.

*Id.*

Unlike Tucker, Childress knew that a court-appointed lawyer was present at his 1946 and 1948 plea hearings. But Childress did not know why counsel was present, and in neither case did counsel bestir himself to advocate the defendant's interests.

Perhaps the case that best illuminates the present one is *United States v. Taylor*, 933 F.2d 307 (5th Cir.), *cert. denied*, 502 U.S. 883, 112 S.Ct. 235, 116 L.Ed.2d 191 (1991). In *Taylor*, this court found a Sixth Amendment deprivation despite the presence in court of "standby counsel."

Taylor was charged with escaping from federal custody. The district court granted Taylor's request to represent himself at trial, but appointed a public defender to act as standby counsel. *Id.* at 309. The public defender "played a significant role in the

22

trial, frequently consulting with Taylor and assisting him in presenting a motion for acquittal." *Id.* at 311. Taylor nevertheless was convicted. He then withdrew his request to represent himself and asked the court to appoint defense counsel for his sentencing. The district court refused this request and ordered the public defender to continue as standby counsel. *Id.* at 309, 311. Taylor, dissatisfied with the outcome of the proceedings, appealed his sentence.

We held that Taylor had been constructively denied his constitutional right to the assistance of counsel, and that he was not required to show prejudice under *Strickland*. We stated:

> [T]here is a great difference between having a bad lawyer and having no lawyer: if the lawyering is merely ineffective, then the decision to grant relief turns on the degree of incompetence and prejudice to the defendant; if the defendant had no lawyer, prejudice is legally presumed in every case, and the defendant is entitled to relief in every case.

*Id.* at 312 (citations omitted). Applying that distinction, and relying primarily on *Cronic*, we determined that standby counsel is, in constitutional terms, no counsel at all. We explained:

> Given the limited role that a standby attorney plays, we think it clear that the assistance of standby counsel, no matter how useful to the court or the defendant, cannot qualify as the assistance of counsel required by the Sixth Amendment. There can be no question that the roles of standby counsel and full-fledged defense counsel are fundamentally different. The very definition of full-fledged counsel includes the proposition that the counselor, and not the accused, bears the responsibility for the defense; by contrast, the key limitation on standby counsel is that such counsel not be responsible-- and not be perceived to be responsible--for the accused's defense.

*Id.* at 312.

23

We emphasized in *Taylor* that "[s]tandby counsel does not represent the defendant." *Id.* at 313. *See also id.* at 312-13 (citing *McKaskle v. Wiggins*, 465 U.S. 168, 177-78, 104 S.Ct. 944, 950-51, 79 L.Ed.2d 122 (1984) (explaining the limited role of standby counsel)). Rather, his role is one of an "observer, an attorney who attends the proceeding and who may offer advice, but who does not speak for the defendant or bear responsibility for his defense." *Id.*

Application of Sixth Amendment Precedent to Childress

In our view, the defense attorney in Childress's 1946 and 1948 plea hearings was the equivalent of standby counsel. He was in court to stand by, listen to the judge, and respond to any contingencies that might arise. He took no responsibility for advocating the defendant's interests at a critical phase of the proceeding. As the state trial judge observed at Childress's 1992 sentencing, counsel was "on the spot" but did not actively assist the defendant. Childress testified that he had no idea why a lawyer was appointed to stand with him in court. Cutler's testimony reflected that appointed counsel in Harris County in the late 1940s routinely failed to discuss strategy with their clients, research the law, investigate the facts, or otherwise go to bat for the accused. The state court's factual findings in this case, based upon the uncontroverted and unimpeached defense testimony, support the conclusion that Childress was aided, if at all, by standby counsel rather than full-fledged defense counsel. In these circumstances, we are convinced that counsel, though surely more

24

sentient than a potted plant, was not the advocate for the defense whose assistance is contemplated by the Sixth Amendment.[14]  The failure of counsel to live up to the constitutional command, moreover, resulted directly from the operation of the Texas statute requiring the appointment of counsel for the sole purpose of surrendering the accused's right to jury trial.

CONCLUSION

In light of the Supreme Court's clearly established Sixth Amendment jurisprudence, we must conclude that the state cannot punish Childress today based upon convictions secured a half-century ago in violation of his right to counsel.  We emphasize that we are not expanding the reach of the constructive denial of counsel doctrine.  Our holding is rooted in the unusual circumstances of this case, particularly the long-since abandoned state procedure of appointing counsel solely to waive the defendant's right to jury trial, together with the state court's determination that counsel in fact did nothing to represent

---

[14]The state asserts that by pleading guilty in open court, Childress waived his right to attack his enhancement convictions, except by challenging the voluntary and intelligent character of the guilty pleas. *See Bradbury v. Wainwright*, 658 F.2d 1083, 1087 (5th Cir. Unit B Oct. 1981), *cert. denied*, 456 U.S. 992, 102 S.Ct. 2275, 73 L.Ed.2d 1288 (1982).  Of course Childress has raised just such a challenge, maintaining that the constructive denial of counsel resulted in guilty pleas that were constitutionally infirm.  Our precedents clearly establish that if the advice of counsel falls below the minimum required by the Sixth Amendment, the guilty plea cannot be deemed knowing and voluntary because it does not represent an informed waiver of the defendant's rights. *Mason v. Balcom*, 531 F.2d 717, 725 (1976).  It is clear that a constructive denial of counsel falls short of the minimum requirements of the Sixth Amendment.

appellant's interests. When defense counsel is appointed solely to execute the defendant's waiver of jury trial, and when the evidence establishes that counsel performed no other service for the defendant, it cannot be said that the defendant received the assistance of counsel for his defense.

We break no new ground by declaring that a defense lawyer who fails to actively assist the defendant during a critical stage of the prosecution is not the counsel whose assistance is contemplated by the Sixth Amendment. The *Gideon* violations in this case were "constitutional error[s] of the first magnitude" obviating the need for a showing of prejudice. *Cronic*, 466 U.S. at 659, 104 S.Ct. at 2047 (internal citation and quotation marks omitted).

In the circumstances of this case, we hold that Childress was constructively denied his constitutional right to the assistance of counsel, and that accordingly, his enhanced twenty-five year sentence cannot stand.

The decision of the district court is REVERSED and the case REMANDED with instructions to issue the writ of habeas corpus unless, within a reasonable time to be designated by the district court, the state resentences the prisoner.