**Drew Timothy MORSE, Petitioner,**

v.

**David TRIPPETT, Respondent.**

No. 98–73323.

United States District Court,
E.D. Michigan,
Southern Division.

June 19, 2000.

Andrew Wise, Federal defenders Office, Detroit, MI, for Petitioner.

William C. Campbell, Michigan Dept. of Attorney General, Habeas Corpus Div., Lansing, MI, for Respondent.

OPINION AND ORDER GRANTING
PETITION FOR WRIT OF
HABEAS CORPUS [1]

TARNOW, District Judge.

| | | |
|---|---|---|
| I. | *Introduction* | 365 |
| II. | *Facts* | 365 |
| III. | *Procedural History* | 365 |
| IV. | *Standard of Review* | 399 |
| V. | *Ineffective Assistance of Counsel* | 400 |
| | A. *Procedural Default* | 400 |
| | B. *Ineffective Assistance of Trial Counsel* | 402 |
| | C. *Ineffective Assistance of Appellate Counsel* | 409 |
| | D. *Actual Absence of Counsel* | 410 |
| VI. | *Voluntariness of Guilty Plea* | 411 |
| VII. | *Double Jeopardy Claim* | 412 |
| VIII. | *Motion for Bond* | 412 |
| IX. | *Conclusion* | 413 |

## I. *Introduction*

Plaintiff Drew Timothy Morse, a state prisoner currently paroled, having recently been incarcerated at the Mound Correctional Facility in Detroit, Michigan, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, alleging that he was incarcerated in violation of his constitutional rights. Because the Court determines that Petitioner had ineffective assistance of counsel and the absence of counsel during his guilty plea proceedings and on direct appeal, the Court grants Mr. Morse's petition for habeas relief.

## II. *Facts*

On February 24, 1990, at approximately 1:45 a.m., Petitioner was stopped while he was driving his car because the vehicle's tail lights were not working. After stopping Petitioner, the police discovered that he was driving with a suspended license. Police arrested Petitioner. A police officer then conducted a standard inventory search of the vehicle. He found two plastic bags containing cocaine, marijuana, and drug paraphernalia in the center console between the front two seats.

## III. *Procedural History*

On May 22, 1990, Petitioner pleaded guilty to one count of possession with intent to deliver over 50 grams of cocaine in Genesee County Circuit Court pursuant to a plea agreement whereby the prosecutor agreed to *nolle prosequi* a supplemental information charging Petitioner as a habitual offender, fourth. When he entered the plea, Petitioner was represented by Attorney David A. Nelson.

Prior to sentencing, Petitioner, through newly-retained Attorney Harry S. Sherwin, filed a motion to withdraw guilty plea, claiming that Petitioner thought he was pleading guilty to possession of less than 50 grams of cocaine. The trial court conducted a hearing on the motion to withdraw guilty plea at which Petitioner testified. Following the hearing, the court denied Petitioner's motion, finding that the plea had been knowingly and voluntarily entered. Petitioner was sentenced to ten to twenty years imprisonment.

Petitioner, through appointed counsel Lawrence R. Greene, appealed his sentence in the Michigan Court of Appeals, presenting the following issue:

 I. The trial court violated the standards specified in *People v. Coles,* 417 Mich. 523, 339 N.W.2d 440 (1983) when sentencing the [Petitioner] in this matter.

Petitioner, through Attorney Greene, filed a motion for leave to file a supple-

---

**1.** Staff Attorney Mary Beth Collery provided quality research assistance.

mental brief in the Michigan Court of Appeals on May 21, 1991 so that Petitioner could submit a proportionality argument that reflected the Michigan Supreme Court's decision in *People v. Milbourn*, 435 Mich. 630, 461 N.W.2d 1 (1990). The motion for leave to file a supplemental brief was denied. *People v. Morse*, No. 131309 (June 28, 1991).

On August 29, 1991, Petitioner, through Attorney Greene, filed in the Michigan Court of Appeals a motion to remand to the trial court to conduct an evidentiary hearing pursuant to *People v. Ginther*, 390 Mich. 436, 212 N.W.2d 922 (1973), on Petitioner's claim that he received ineffective assistance of trial counsel. Petitioner claimed that Attorney Nelson induced him to plead guilty by promising that he would receive probation or a term of one to five years imprisonment. The Michigan Court of Appeals denied Petitioner's motion to remand without prejudice to Petitioner's right to raise the issues on appropriate motion in the trial court. *People v. Morse*, No. 131309 (Oct. 4, 1991).

On September 23, 1991, Petitioner's counsel, Lawrence R. Greene, filed a Motion to be Relieved as Counsel in the Genesee County Circuit Court on grounds that are not apparent from the record before the Court. The motion was granted on October 21, 1991. There is no evidence that replacement counsel was ever appointed or that Petitioner concurred in Greene's removal as counsel.

On November 1, 1991, the Michigan Court of Appeals issued an Opinion affirming Petitioner's conviction and sentence. *People v. Morse*, No. 131309 (Mich.Ct.App. Nov. 1, 1991).

Petitioner attempted to file a delayed application for leave to appeal in the Michigan Supreme Court. His application was rejected by the Michigan Supreme Court on April 6, 1994 as untimely.

On January 21, 1992, Petitioner filed a motion for relief from judgment and motion for a hearing pursuant to *People v.*

*Ginther*, 390 Mich. 436, 212 N.W.2d 922 (1973) in the trial court claiming: (i) that his plea was coerced by the filing of a false charge of habitual offender, fourth when he only had two prior felony convictions; (ii) ineffective assistance of counsel; and (iii) that his sentence was disproportionate and based upon inaccurate information. The trial court denied Petitioner's motion. *People v. Morse*, No. 90–42746 (Genesee Cty. Circuit Ct. Feb. 27, 1992).

On August 14, 1992, Petitioner filed a Request for Appointment of New Appellate Counsel or Counsel to File for Post Conviction Relief in the trial court. Petitioner claimed that he was denied his right to effective assistance of counsel because his appointed appellate counsel, Attorney Greene, had been admonished by the Attorney Grievance Commission for failing adequately to research the case law governing his claim of disproportionate sentence prior to filing Petitioner's appeal in the Michigan Court of Appeals. The trial court denied Petitioner's motion, holding that the Attorney Grievance Commission's letter admonishing Attorney Greene failed to establish that Petitioner received ineffective assistance of counsel. *People v. Morse*, No. 90–42746–FH (Genesee Cty. Circuit Ct. Aug. 28, 1992).

Petitioner filed a second motion for relief from judgment on February 8, 1993, presenting the following claims: (1) promise-induced guilty plea; (2) sentence violated *People v. Milbourn*, 435 Mich. 630, 461 N.W.2d 1 (1990); (3) guilty plea was not entered knowingly, intelligently and voluntarily; (4) the court abused its discretion in denying motion to withdraw guilty plea; (5) constitutional deprivation of effective assistance of trial counsel Nelson and Sherwin, and appeal counsel Greene; (6) cause and prejudice prongs of *Strickland v. Washington* and M.C.R. 6.508(D)(3)(a); and (7) Petitioner entitled to an evidentiary hearing on ineffective assistance of counsel claim and on claim of cause and prejudice.

In an Opinion dated March 29, 1994, the trial court denied Petitioner's motion for relief from judgment pursuant to M.C.R. 6.504(B)(2). *People v. Morse,* No. 90–42746–FH (Genesee Cty. Circuit Ct. March 29, 1994). Petitioner did not appeal this decision.

On April 25, 1995, Petitioner filed another motion for relief from judgment, presenting the following issue:

I. [Petitioner's] 5th, 8th, and 14th Amendments [rights] were violated by punishment of forfeiture and conviction and sentence for single offense and incident.

Following oral argument on the motion at which the prosecutor appeared, the trial court denied Petitioner's motion. Hearing Tr., 10/2/95, p. 6. Petitioner filed a motion for reconsideration of the court's order denying his motion for relief from judgment, which was also denied. *People v. Morse,* No. 90–42746–FH (Genesee Cty. Circuit Ct. Nov. 8, 1995).

On March 7, 1996, Petitioner filed a delayed application for leave to appeal in the Michigan Court of Appeals for the trial court's November 8, 1995 Order, presenting the following claims:

I. [Petitioner] is entitled to have his conviction and sentence dismissed and vacated because the[y] were obtained in violation of his constitutional protection against double jeopardy as guaranteed by USCA Amend 5 and 14, where he was punished first in a forfeiture proceeding and then again by being convicted and sentenced for the same conduct in a criminal proceeding.

II. [Petitioner] was denied his Sixth Amendment right to effective counsel when he was induced to plead guilty to an illusionary [sic] plea agreement wherein he was threatened with being tried as a habitual offender fourth offense which carried a maximum of life imprisonment where in fact [Petitioner] had only two prior convictions, thus rendering his plea both unintelligent and illusionary [sic], as a direct result of the inaccurate advice of counsel.

III. [Petitioner] was denied Sixth Amendment right to effective assistance of counsel when trial counsel failed to seek suppression of evidence obtained during pretextual traffic stop in violation of USCA Amend 4 and 6 and due process of law USCA Amend 14.

IV. [Petitioner] was denied effective assistance of counsel at sentencing and on appeal, where counsels failed to fully present to the trial and appeal court the factors for fair determination of his motion to withdraw his guilty plea because of illusionary [sic] and improper advice along with inadequate investigation that rendered appellate counsel ineffective as to the cumulative effect of double jeopardy violation, failure to seek suppression and illusionary [sic] plea bargain, thus entitling [Petitioner] to reversal of his conviction and remand for an evidentiary hearing and his conviction vacated or a new trial ordered.

Along with his delayed application for leave to appeal, Petitioner filed in the Michigan Court of Appeals a motion for remand for evidentiary hearing to develop a record on Petitioner's claim of ineffective assistance of counsel.

The Michigan Court of Appeals denied Petitioner's motion for remand and denied his delayed application for leave to appeal "for failure to establish grounds for relief from judgment pursuant to M.C.R. 6.508(D)." *People v. Morse,* No. 193105 (Mich.Ct.App. Sept. 11, 1996). Petitioner filed a motion for rehearing in the Michigan Court of Appeals, which was denied. *People v. Morse,* No. 193105 (Mich.Ct.App. Dec. 2, 1996).

On January 6, 1997, Petitioner filed a delayed application for leave to appeal in the Michigan Supreme Court, presenting the claims presented to the Michigan Court of Appeals and the following additional claim:

I. [Petitioner] was denied Sixth Amendment right to effective assistance of counsel, and fair review on this motion for relief from judgment, when the trial court failed to properly decide his motion and make a determination as to the acts and conduct of counsel at trial and on appeal, where both counsels were both deficient and prejudicial, allowing a miscarriage of justice to occur.

The Michigan Supreme Court denied Petitioner's delayed application for leave to appeal "because the defendant has failed to meet the burden of establishing entitlement to relief under M.C.R. 6.508(D)." *People v. Morse*, No. 108167 (Mich. Nov.7, 1997).

On June 9, 1998, Petitioner filed a request for new trial or for evidentiary hearing in the trial court claiming (1) prosecutorial misconduct because the prosecutor misrepresented to the trial court that Petitioner had three prior felony convictions; (2) the plea bargain was illusory; and (3) one of Petitioner's three prior convictions upon which the habitual offender, fourth charge was predicated was a misdemeanor. The trial court construed Petitioner's motion as a successive motion for relief from judgment and denied the motion because "M.C.R. 6.502(G) prohibits the filing of more than one motion for relief from judgment after August 1, 1995, except as provided in subrule (G)(2)."

Petitioner filed the pending habeas corpus petition on August 19, 1998, presenting the following claims:

I. [Petitioner] was denied the Sixth Amendment right to effective assistance of counsel, and fair review on his motion for relief from judgment, when the trial court failed to properly decide his motion and make a determination as to the acts and conduct at trial and on appeal, where both counsels were both deficient and prejudicial, allowing a miscarriage of justice to occur.

II. [Petitioner] is entitled to have his conviction and sentence vacated because they were obtained in violation of his constitutional rights against double jeopardy as guaranteed by USCA amend 5 and 14, where he was punished first in a forfeiture proceeding and then again by being convicted and sentenced for the same conduct in a criminal proceeding.

III. [Petitioner] was denied his Sixth Amendment right to effective assistance of counsel when he was induced to plead guilty to an illusionary [sic] plea agreement wherein he was threatened with being tried as a habitual offender fourth offense which carried a maximum of life imprisonment where in fact appellant only had two prior convictions thus rendering his plea both unintelligent and illusionary [sic], as a direct result of the inaccurate advice of counsel.

IV. [Petitioner] was denied Sixth Amendment right to effective assistance of counsel when trial counsel failed to seek suppression of evidence obtained during pretextual traffic stop in violation of USCA 4 and 6 and due process of law, USCA amend 14.

V. [Petitioner] was denied effective assistance of counsel at sentencing and on appeal, where counsels failed to fully present to the trial and appeal court the factors for fair determination of his motion to withdraw his guilty plea because of illusionary [sic] and improper advice along with inadequate investigation that rendered appel-

late counsel ineffective as to the cumulative effects of double jeopardy violation, failure to seek suppression and illusionary [sic] plea bargain, thus entitling [Petitioner] to reversal of his conviction and remand for an evidentiary hearing and his conviction vacated or a new trial.

## IV. *Standard of Review*

The Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, 110 Stat. 1214 ("AEDPA") altered the standard of review federal courts must apply when reviewing applications for a writ of habeas corpus. The AEDPA applies to all habeas petitions filed after the effective date of the act, April 24, 1996. Because petitioner's application was filed after April 24, 1996, the provisions of the AEDPA, including the amended standard of review, apply to this case.

 As amended, 28 U.S.C. § 2254(d) imposes the following standard of review that a federal court must utilize when reviewing applications for a writ of habeas corpus:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d). Therefore, federal courts are bound by a state court's adjudication of a petitioner's claims unless the state court's decision was contrary to or involved an unreasonable application of clearly established federal law. *Franklin v. Francis*, 144 F.3d 429 (6th Cir.1998), *cert. denied* 525 U.S. 1132, 119 S.Ct. 1022, 142 L.Ed.2d 973 (1999). Additionally, this Court must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1) [2]; *see also Cremeans v. Chapleau*, 62 F.3d 167, 169 (6th Cir.1995), *cert. denied* 516 U.S. 1096, 116 S.Ct. 822, 133 L.Ed.2d 765 (1996). ("We give complete deference to state court findings unless they are clearly erroneous.")

The United States Supreme Court has explained the proper application of the "contrary to" clause as follows:

A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . .

A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

*Williams v. Taylor*, —— U.S. ——, 120 S.Ct. 1495, 1519–20, 146 L.Ed.2d 389 (2000) (O'Connor, J., concurring).

With respect to the "unreasonable application" clause of § 2254(d)(1), the United States Supreme Court held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause when "a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." *Id.* at 1521. The Court defined "unreasonable application" as follows:

**2.** 28 U.S.C. § 2254(e)(1) provides, in pertinent part:

In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.

[A] federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable . . .

[A]n unreasonable application of federal law is different from an incorrect application of federal law. . . . Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

*Id.* at 1521–22.

With this standard in mind, the Court proceeds to the merits of the petition for a writ of habeas corpus.

## V. *Ineffective Assistance of Counsel*

Petitioner claims that he was denied the effective assistance of trial and appellate counsel. Specifically, he argues that his trial counsel, David Nelson, was constitutionally ineffective because he (1) failed to file a motion to suppress illegally obtained evidence; (2) misrepresented to Petitioner the charge to which he pleaded guilty; and (3) incorrectly advised Petitioner that if he failed to plead guilty he could be sentenced to life imprisonment as a fourth habitual offender.

With respect to appellate counsel, Lawrence Greene, Petitioner argues that Attorney Greene erred in failing to raise on appeal the claims of ineffective assistance of trial counsel, the illusory nature of Petitioner's plea agreement, and the trial court's denial of Petitioner's motion to withdraw guilty plea.

### A. *Procedural Default*

■ As an initial matter, respondent claims that Petitioner's ineffective assistance of counsel claims are precluded from review in this Court by alleged multiple procedural defaults. The doctrine of procedural default provides:

In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default, and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson,* 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). Such a default may occur if the state prisoner files an untimely appeal, *Coleman,* 501 U.S. at 750, 111 S.Ct. 2546, if he fails to present an issue to a state appellate court at his only opportunity to do so, *Rust v. Zent,* 17 F.3d 155, 160 (6th Cir.1994), or if he fails to comply with a state procedural rule that required him to have done something at trial to preserve his claimed error for appellate review, e.g., to make a contemporaneous objection, or file a motion for a directed verdict. *United States v. Frady,* 456 U.S. 152, 167–69, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982); *Simpson v. Sparkman,* 94 F.3d 199, 202 (6th Cir.1996). Application of the cause and prejudice test may be excused if a petitioner "presents an extraordinary case whereby a constitutional violation resulted in the conviction of one who is actually innocent." *Rust,* 17 F.3d at 162; *Murray v. Carrier,* 477 U.S. 478, 496, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986).

■ For the doctrine of procedural default to apply, a firmly established state procedural rule applicable to the petitioner's claim must exist, and the petitioner must have failed to comply with that state procedural rule. *Warner v. United States,* 975 F.2d 1207, 1213–14 (6th Cir.1992), *cert. denied,* 507 U.S. 932, 113 S.Ct. 1314, 122 L.Ed.2d 702 (1993). Additionally, the last state court from which the petitioner sought review must have invoked the state procedural rule as a basis for its decision

to reject review of the petitioner's federal claim. *Coleman*, 501 U.S. at 729–30, 111 S.Ct. 2546. "When a state court judgment appears to have rested primarily on federal law or was interwoven with federal law, a state procedural rule is an independent and adequate state ground only if the state court rendering judgment in the case clearly and expressly stated that its judgment rested on a procedural bar." *Simpson*, 94 F.3d at 202.

█ If the last state court from which the petitioner sought review affirmed the conviction both on the merits, and, alternatively, on a procedural ground, the procedural default bar is invoked and the petitioner must establish cause and prejudice in order for the federal court to review the petition. *Rust*, 17 F.3d at 161. If the last state court judgment contains no reasoning, but simply affirms the conviction in a standard order, the federal habeas court must look to the last reasoned state court judgment rejecting the federal claim and apply a presumption that later unexplained orders upholding the judgment or rejecting the same claim rested upon the same ground. *Ylst v. Nunnemaker*, 501 U.S. 797, 803, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991).

█ This Court begins its analysis of whether Petitioner's claims are procedurally defaulted by looking to the last reasoned state court judgment denying Petitioner's claims. *See Coleman*, 501 U.S. at 729–30, 111 S.Ct. 2546. Respondent claims that the last reasoned state court judgment is the Michigan Supreme Court's decision denying Petitioner's delayed application for leave to appeal the trial court's denial of his motion for relief from judgment. Respondent argues that, based on that decision, Petitioner's ineffective assistance of counsel claims are procedurally defaulted. Respondent's Answer at pp. 17–18. The Michigan Supreme Court's decision, in its entirety, stated:

> Leave to appeal denied because the defendant has failed to meet the burden of

establishing entitlement to relief under M.C.R. 6.508(D).

*People v. Morse*, 456 Mich. 885, 570 N.W.2d 660 (1997).

Respondent's argument that the Michigan Supreme Court's reference to M.C.R. 6.508(D) constitutes procedural default is untenable. First, this conclusory denial of Petitioner's application for leave to appeal can hardly be considered a reasoned state court judgment to which this Court would turn to determine whether procedural default is invoked. The Michigan Supreme Court's Order falls squarely within the ambit of a "standard order" which the United States Supreme Court directed federal courts to look past in favor of the last reasoned state court judgment. *Ylst*, 501 U.S. at 803, 111 S.Ct. 2590.

Second, Respondent rests its argument of procedural default on subsection (3) of M.C.R. 6.508(D). The Michigan Supreme Court simply did not refer to subsection (3). M.C.R. 6.508(D) states, in pertinent part: "The defendant has the burden of establishing entitlement to the relief requested." The Michigan Supreme Court's reference to M.C.R. 6.508(D) in general and no subsection in particular, therefore, leads to the conclusion that the Michigan Supreme Court simply held that Petitioner was not entitled to relief. Such a holding certainly does not establish a procedural default.

The Michigan Court of Appeals' denial of Petitioner's application for leave to appeal, in its entirety, stated as follows:

> The court orders that the motion to remand is denied. The delayed application for leave to appeal is denied for failure to establish grounds for relief from judgment pursuant to M.C.R. 6.508(D).

*People v. Morse*, No. 193105 (Mich.Ct.App. Sept. 11, 1996). For the reasons set forth above, this too is not a reasoned state court judgment sufficient to establish procedural default.

■ This Court, therefore, turns to the trial court's Order Denying Relief from Judgment to determine whether Petitioner's claims are barred by procedural default. The trial court denied Petitioner's Motion for Relief from Judgment, which presented, *inter alia*, claims of ineffective assistance of counsel, on the following basis:

> Post-appeal relief cannot be granted when the defendant alleges grounds for relief which were decided against the defendant in a prior appeal or proceeding under M.C.R. 6.500, unless the defendant establishes that a retroactive change in the law has undermined the prior decision. M.C.R. 6.508(D)(2); *People v. Reed,* 198 Mich.App. 6[3]9 (1993).

*People v. Morse,* No. 90–42746 (Genesee County Circuit Ct. March 29, 1994).

Michigan Court Rule 6.508(D)(2) states, in pertinent part:

> (D) ... The court may not grant relief to the defendant if the motion
>
> > (2) alleges grounds for relief which were decided against the defendant in a prior appeal or proceeding under this subchapter, unless the defendant establishes that a retroactive change in the law has undermined the prior decision ...

M.C.R. 6.508(D)(2).

Rule 6.508(D)(2) is simply a *res judicata* rule barring a defendant from relitigating claims in a motion for relief from judgment which were decided adversely to him in a prior state court decision. Because Petitioner's ineffective assistance of counsel claims were considered on the merits in Petitioner's prior motion for relief from judgment, there is no bar to habeas review of these claims. *See Ceja v. Stewart,* 97 F.3d 1246, 1253 (9th Cir.1996), *cert. denied* 522 U.S. 971, 118 S.Ct. 422, 139 L.Ed.2d 324 (1997); *Silverstein v. Henderson,* 706 F.2d 361, 368 (2d Cir.1983), *cert. denied* 464 U.S. 864, 104 S.Ct. 195, 78 L.Ed.2d 171 (1983).

## B. *Ineffective Assistance of Trial Counsel*

Petitioner claims that his trial counsel David Nelson was ineffective because he (1) failed to file a motion to suppress illegally obtained evidence; (2) misrepresented to Petitioner the charge to which he pleaded guilty; and (3) incorrectly advised Petitioner that if he failed to plead guilty he could be sentenced to life imprisonment as a fourth habitual offender.

■ Where a state court, although deciding a claim, does not offer some explanation of its decision, a federal court must conduct an independent review of the state court's decision. *Harris v. Stovall,* 212 F.3d 940 (6th Cir.2000). This independent review requires the federal court to "review the record and applicable law to determine whether the state court decision is contrary to federal law, unreasonably applies clearly established law, or is based on an unreasonable determination of the facts in light of the evidence presented." *Id.* at 943. However, the independent review "is not a full, *de novo* review of the claims, but remains deferential because the court cannot grant relief unless the state court's result is not in keeping with the strictures of the AEDPA." *Id.* In this case, the last state court to address the merits of Petitioner's ineffective assistance of counsel claims rejected them in a one-sentence statement lacking any analysis or reasoning. *See People v. Morse,* No. 90–42746, slip op. at 4. Therefore, this Court conducts an independent review of Petitioner's ineffective assistance of counsel claims.

In *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court established a two-pronged test for determining whether a petitioner has received ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient, which "requires a showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guar-

anteed by the Sixth Amendment." *Id.* at 687, 104 S.Ct. 2052. Second, a petitioner must show that counsel's deficient performance prejudiced petitioner. A petitioner may establish prejudice by "showing that counsel's errors were so serious as to deprive the defendant of a fair trial." *Id.*

The Supreme Court emphasized that, when considering an ineffective assistance of counsel claim, the reviewing court should afford counsel a great deal of deference:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.

*Id.* at 689, 104 S.Ct. 2052 (internal citations omitted).

The Court further explained that, to establish deficient performance, a petitioner must identify acts that were "outside the wide range of professionally competent assistance." *Id.* To satisfy the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S.Ct. 2052. The Sixth Circuit, applying the *Strickland* standard, has held that a reviewing court therefore must focus on whether counsel's alleged errors "have undermined the reliability of and confidence in the result." *McQueen v. Scroggy,* 99 F.3d 1302, 1311 (6th Cir.1996), *cert. denied* 520 U.S. 1257, 117 S.Ct. 2422, 138 L.Ed.2d 185 (1997).

■ The two-part *Strickland* test applies to claims of ineffective assistance of counsel based upon counsel's conduct prior to the entry of a guilty plea. *Hill v. Lockhart,* 474 U.S. 52, 58–59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). In the context of guilty pleas, the first half of the *Strickland v. Washington* test is the same standard set forth above. *Id.* The second, or "prejudice," requirement, on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the "prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. *Id.*

■ However, the Court in *Strickland* held that the prejudice is presumed when a defendant suffers the actual or constructive denial of counsel:

> In certain Sixth Amendment contexts, prejudice is presumed. Actual or constructive denial of the assistance altogether is legally presumed to result in prejudice.

*Id.* at 692, 104 S.Ct. 2052.

In *U.S. v. Cronic,* 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984), a United States Supreme Court opinion issued the same day as *Strickland,* the United States Supreme Court elaborated on the presumption of prejudice rule enunciated in *Strickland.* In *Cronic,* the Court held:

> There are, however, circumstances that are so likely to prejudice the accused

that the cost of litigating their effect in a particular case is unjustified.

Most obvious, of course, is the complete denial of counsel. The presumption that counsel's assistance is essential requires us to conclude that a trial is unfair if the accused is denied counsel at a critical stage of his trial.... Similarly, if counsel entirely fails to subject the prosecution's case to meaningful adversarial testing, then there has been a denial of Sixth Amendment rights that makes the adversary process itself presumptively unreliable.

*Id.* at 658–59, 104 S.Ct. 2039.

In *Rickman v. Bell,* 131 F.3d 1150 (6th Cir.1997), *cert. denied* 523 U.S. 1133, 118 S.Ct. 1827, 140 L.Ed.2d 962 (1998), the Sixth Circuit Court of Appeals, applying the *Cronic* analysis, held that a habeas corpus petitioner had been constructively denied his right to counsel where counsel's performance was so egregious that it was tantamount to an absence of counsel. In *Rickman,* the petitioner, Ronald Rickman, was convicted of first-degree murder and sentenced to death in the killing of Deborah Lee Groseclose. The facts surrounding Mrs. Groseclose's death were particularly gruesome. The evidence presented showed that, after being hired by Mrs. Groseclose's husband to kill her, Rickman and another man entered her home, raped her and then, after listening to her plead for her life, the petitioner strangled her. After strangling Mrs. Groseclose, Rickman could still detect a pulse, so he stabbed her three or four times in her back. The men then placed Mrs. Groseclose in the trunk of her car, drove the car to a parking lot, and, despite hearing cries for help from the trunk, abandoned the car. Mrs. Groseclose's body was discovered five days later. Medical testimony presented at the trial suggested that her injuries were not fatal, but that she died from the excessive heat in the trunk of the car. *Id.* at 1151–52.

Rickman's attorney, Robert Livingston, blatantly showed his disdain and contempt for his client throughout the course of the trial. According to Livingston, his trial strategy was to depict his client as an abnormal, sick person in hopes that the jury would feel some sympathy for Rickman and therefore not impose the death penalty. Instead, "Livingston succeeded in creating a loathsome image for Rickman—one that would make a juror feel compelled to rid the world of him." *Id.* at 1157. The Sixth Circuit held that, despite Livingston's attempts to shield his behavior from questioning by calling it trial strategy, his behavior was so egregious as to effectively deny Rickman the right to counsel:

... Livingston's performance was so egregious as to amount to the virtual or constructive denial of the assistance of counsel, and thus implicate the *Cronic* presumption of prejudice ... Livington's behavior can be termed nothing short of shocking and professionally outrageous....

*Id.* at 1156.

In conclusion, the Sixth Circuit stated:

[T]he Tennessee judiciary permitted to occur here ... nothing less than the evisceration of the right-to-counsel that is guaranteed by the Sixth Amendment and as much a travesty for our entire judicial system as it is for Rickman individually. The display of Rickman's trial, if allowed to stand would simply mock fundamental constitutional guarantees of "vital importance." *Strickland,* 466 U.S. at 685, 104 S.Ct. at 2063. The Court's recognition that "the right to counsel is the right to the effective assistance of counsel," *Id.* at 686, 104 S.Ct. at 2063, would be devoid of meaning were counsel like Livingston deemed effective.

*Id.* at 1160 (internal citation omitted).

Similarly, in *Lakin v. Stine,* 44 F.Supp.2d 897 (E.D.Mich.1999), this Court applied the standard articulated in *Cronic* to find that the petitioner was presumptively prejudiced where he suffered the constructive denial of counsel. The peti-

tioner in *Lakin,* who was charged with kidnaping a prison guard, assaulting a prison guard and escape from prison, was represented by court-appointed counsel. The petitioner filed a motion for new counsel because his attorney would not meet with him privately. During all of counsel's meetings with his client, two prison guards remained in the meeting room. The petitioner's conviction was affirmed on direct appeal in state court. Thereafter, the petitioner filed a habeas corpus petition in this Court. This Court held that because the petitioner was prevented from privately conferring with his attorney, he had been constructively denied the right to counsel:

> Mr. Lakin was denied the right to counsel. Counsel means open and complete communication. The presence of the guards at every meeting Mr. Lakin had with his attorney prevented such communication. Mr. Lakin requested of his attorney and of the trial court to fix the situation: excuse the guards from the room and allow for private communication. No one heeded his call. The fact that Mr. Lakin was denied the opportunity to speak freely and confidentially with his attorney denied him counsel. The state gave Mr. Lakin a person who appeared in court on behalf of him, but that person was not counsel. That person was not counsel, because there was never a time that Mr. Lakin could freely speak with him. Without communication, there was no attorney.

*Id.* at 900.

Other courts have, in less egregious circumstances, held that a petitioner was constructively denied the right to counsel and that, pursuant to *Cronic,* a finding of *per se* prejudice was compelled. For example, in *Tippins v. Walker,* 77 F.3d 682 (2d Cir.1996), the Second Circuit Court of Appeals held that prejudice was presumed when an attorney slept during a substantial portion of the trial. The Second Circuit explained why such circumstances warranted a *Cronic* presumption of prejudice rather than analysis under the *Strickland* prejudice test:

> "Prejudice is inherent" at some point, "because unconscious or sleeping counsel is equivalent to no counsel at all." *Javor v. U.S.,* 724 F.2d 831, 834 (9th Cir.1984). Effectiveness of counsel depends in part on the ability to confer with the client during trial on a continuous basis ... Moreover, if counsel sleeps, the ordinary analytical tools for identifying prejudice are unavailable. The errors and lost opportunities may not be visible in the record, and the reviewing court applying the traditional *Strickland* analysis may be forced to engage in "unguided speculation." *Id.* (quotations omitted).

> Moreover, the question of prejudice under *Strickland* ordinarily entails consideration of the range of strategies and tactics available to a lawyer.... On that basis, in case after case, we have declined to deem counsel ineffective notwithstanding a course of action (or inaction) that seems risky, unorthodox or downright ill-advised. .... Of course, the buried assumption in our *Strickland* cases is that counsel is present and conscious to exercise judgment, calculation and instinct, for better or worse. But that is an assumption we cannot make when counsel is unconscious at critical times.

> Although respondent argues that [petitioner] failed to carry his burden of adducing specific attorney errors resulting in prejudice, we understand [petitioner's] claim of prejudice to be not that his lawyer should have taken any particular initiative that would potentially affect the result, but that, at critical times, [petitioner] had no counsel to sort out what initiatives were open. Under those circumstances, where the adversary nature of the proceeding was subject to repeated suspensions, there is little difference between saying that prejudice

will be presumed and saying that prejudice has been demonstrated.

*Id.* at 686–87, 104 S.Ct. 2052.

Numerous other courts have applied the presumed prejudice rule set forth in *Cronic* where an attorney's conduct was so egregious as to effectively deny a defendant his Sixth Amendment right to counsel. *See Harding v. Davis*, 878 F.2d 1341, 1345 (11th Cir.1989) (holding that an attorney's silence throughout virtually the entire trial including a failure to object when the judge directed a verdict against his criminal defendant client warranted a presumption of prejudice pursuant to *Cronic*); *Javor v. U.S.*, 724 F.2d 831, 834 (9th Cir.1984) ("The mere physical presence of an attorney does not fulfill the Sixth Amendment entitled to the assistance of counsel ..., particularly when the client cannot consult with his or her attorney or receive informed guidance from him or her during the course of the trial."); *Burdine v. Johnson*, 66 F.Supp.2d 854, 865–66 (S.D.Tex.1999) (holding that *per se* rule of prejudice applicable where attorney slept through a substantial portion of defendant's trial).

The Court now examines Petitioner's trial counsel David Nelson's conduct in accordance with the standards established in *Strickland* and *Cronic*. Petitioner claims that Attorney Nelson failed to correctly advise him as to the offense to which he was pleading guilty. It is well-established that a plea hearing is a critical stage of the prosecution, thereby invoking a defendant's constitutional right to counsel. *Hamilton v. Alabama*, 368 U.S. 52, 54, 82 S.Ct. 157, 7 L.Ed.2d 114 (1961).[3] Petitioner, through retained-attorney Harry Sherwin[4], filed a motion to withdraw his guilty plea in the state trial court on that basis. During the hearing on Petitioner's motion, Petitioner testified that he thought he was pleading guilty to possession of *less* than 50 grams of cocaine:

> Attorney Sherwin: ... Now, on May 22, 1990 we have a transcript here that indicates that you entered a plea of guilty to Possession of More than 50 grams but less than 225 grams of cocaine, do you remember that day?
>
> Petitioner: Yes, I do.
>
> Attorney Sherwin: Do you remember your guilty plea?
>
> Petitioner: Yes.
>
> Attorney Sherwin: How did your guilty plea come about?
>
> Petitioner: I come in to go to trial and Mr. Nelson told me that I could not beat the case.... He led me to believe that I could not beat the case.
>
> ...
>
> Attorney Sherwin: What did he tell you?
>
> Petitioner: Something about that he was gonna drop the Habitual Offender and charge me with fifty grams or less.
>
> ...

3. An attorney has numerous obligations to a defendant preceding and during a plea hearing. In *Childress v. Johnson*, 103 F.3d 1221, 1227 (5th Cir.1997), the Fifth Circuit enumerated those duties as follows:

 "It is the lawyer's duty to ascertain if the plea is entered voluntarily and knowingly. He must actually and substantially assist his client in deciding whether to plead guilty. It is his job to provide the accused an understanding of the law in relation to the facts.... His advice should permit the accused to make an informed and conscious choice. In other words, if the quality of counsel's service fails below a ceratin minimum level, the client's guilty plea cannot be knowing and voluntary because it will not represent an informed choice. And a lawyer who is not familiar with the facts and law relevant to his client's case cannot meet that required minimum level."

 *Id.* at 1227 (*quoting Herring v. Estelle*, 491 F.2d 125, 128 (5th Cir.1974)).

4. Although Petitioner does not allege that Harry Sherwin rendered ineffective assistance of counsel, the Court notes that his representation of Petitioner was, at best, of questionable worth. The Michigan Attorney Grievance Commission subsequently revoked Mr. Sherwin's license to practice law.

Attorney Sherwin: ... And so, what did you think you were pleading guilty to?

Petitioner: I thought I was pleading guilty to Possession with Intent and drop the Habitual Offender and then under 50 grams of cocaine.

Attorney Sherwin: Now, there was a lot of conversations—you've told me—

Petitioner: I got confused, whenever we got up to make the plea—he—I don't know nothing about the law—what they can and can't do—so, when [Judge] Ransom was answering....He was asking me questions, Mr. Nelson was tellin' me what to say. I was sayin' what he was tellin' me what to say.

6/19/90 Tr. pp. 10–11.

Petitioner's confusion at his plea hearing is understandable given the information regarding Attorney Nelson which came to light during subsequent proceedings before Michigan's Attorney Grievance Commission. Shortly after pleading guilty, Petitioner filed a complaint with the Michigan Attorney Grievance Commission regarding Attorney Nelson's representation. Attorney Nelson pleaded *nolo contendere* to the allegations of professional misconduct and consented to an order of revocation. The Attorney Grievance Commission issued an Order of Revocation by Consent on June 4, 1993. Attorney Nelson filed a Petition for Review in response to the Order of Revocation, which evidences his inability effectively to represent Petitioner:

[Attorney Nelson] has been diagnosed as a paranoid psychotic schizophrenic psychopath and acute alcoholic.

That during the periods in which the purported misconduct occurred which is the subject-matter of the pending formal complaints, [Attorney Nelson] drank alcohol morning, noon, and night; was under the care of therapists; and was in so [sic] institutionalized.

That [Attorney Nelson] is presently undergoing psychiatric care; has extreme-ly limited communication skills; experiences frequent blackouts and paranoia; and is unable to comprehend the full nature of these proceedings.

Attorney Nelson's Petition for Review, filed in *Grievance Administrator v. Nelson,* Nos. 91–267–GA, 92–10–FA, 92–139–GA (June 17, 1993), attached as exhibit to Petition for Writ of Habeas Corpus.

Further, in his Memorandum Brief in Support of Petition for Review, Attorney Nelson expanded on his psychological and substance abuse problems:

First, [Attorney Nelson] is a severe alcoholic with a history of mental instability; was hospitalized for extensive periods in 1992; and is currently undergoing counseling for severe alcoholism, dementia, paranoia, schizophrenic and other difficulties.... The Commission has had possession of [Attorney Nelson's] psychiatric records for in excess of a year and is fully advised as to the duration and scope of [Attorney Nelson's] disabilities; [Attorney Nelson], simply stated is insane.

. . . .

The village idiot, a lunatic, a psychopath, and a dead drunk, it goes without saying, can not knowingly comprehend the full ramifications of the legal and judicial system and their right to notice and an opportunity to be heard....

... [Attorney Nelson] has four (4) separate personalities,' hallucinates, and "hears voices all the time."

*Id.*

An attorney's job is not simply to stand beside the accused in court. An attorney must subject "the prosecution's case to meaningful adversarial testing." *Cronic,* 466 U.S. at 659, 104 S.Ct. 2039. An attorney must counsel the accused, advocate for the accused, and assist the accused in understanding the proceedings against him. *See Id.* at 654, n. 8, 104 S.Ct. 2039 (*quoting Powell v. Alabama,* 287 U.S. 45, 68–69, 53 S.Ct. 55, 77 L.Ed. 158 (1932)).

In the pending case, Attorney Nelson admitted that during the time he represented Petitioner he was suffering from auditory and visual hallucinations, drinking "morning, noon and night," and experiencing blackouts and paranoia. *See* Attorney Nelson's Petition for Review at p. 2. The Court cannot imagine circumstances under which an attorney suffering from Attorney Nelson's admitted psychological and alcohol problems could have acted as the counsel guaranteed by the Sixth Amendment. Clearly, an attorney who, through his own admission cannot "comprehend the full ramifications of the legal and judicial system" was incapable of competently assessing the import of a guilty plea or advising a client of such. *See* Memorandum Brief in Support of Petition for Review.

Based upon Attorney Nelson's admitted psychological illness and alcohol abuse, both of which covered the time during which he was appointed to represent Petitioner, the Court finds that Attorney Nelson's behavior was so egregious that Petitioner was constructively denied the right to counsel. Thus, the *Cronic* presumption of prejudice is invoked. The Michigan Supreme Court's order affirming Petitioner's conviction, therefore, was an unreasonable application of Supreme Court precedent and Petitioner is entitled to habeas corpus relief.

▉ Even if Attorney Nelson's conduct did not constitute the constructive absence of counsel so as to invoke a presumption of prejudice, Petitioner suffered actual prejudice from Attorney Nelson's conduct. In the context of a guilty plea, a petitioner must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on proceeding to trial. *Hill,* 474 U.S. at 58–59, 106 S.Ct. 366.

Following the entry of his guilty plea and prior to sentencing, Petitioner retained new counsel through whom he filed a motion to withdraw his plea. At the hearing on his motion, Petitioner testified that he did not understand the charge to which he was entering a guilty plea. *See* 6/19/90 Transcript, pp. 9–11. Petitioner claims that if he had understood the nature of the charge, he would not have entered a guilty plea. *See* 6/19/90 Transcript, pp. 9–11, 13–16; Petitioner's Memorandum in Support of Petition for Writ of Habeas Corpus, pp. 1–3. The trial court denied Petitioner's motion to withdraw guilty plea because it found that the motion was frivolous. The trial court determined that Petitioner filed the motion because he had become "disenchanted with his plea agreement." Tr., 6/19/90 Hearing, pp. 28–29. Having had an opportunity to review the records detailing Attorney Nelson's severe psychological problems and to assess Petitioner's credibility when Petitioner appeared in this Court for an evidentiary hearing, the Court finds that the trial court's holding was erroneous. The trial court's holding evidences a failure to apprehend Attorney Nelson's grievous conduct and the extent of Petitioner's confusion.

Given Attorney Nelson's inability to understand the legal process, his alcohol addiction, and mental illness coupled with Petitioner's admitted cocaine use prior to the plea hearing, the Court does not doubt Petitioner's confusion regarding his guilty plea. The promptness with which Petitioner filed his motion to withdraw the plea prior to sentencing supports Petitioner's claim that had he understood the nature of his plea, he would not have pleaded guilty. Finally, the Court had an opportunity to judge Petitioner's credibility during the evidentiary hearing conducted on April 7, 2000. Petitioner testified that he would not have entered a guilty plea had he understood the nature of the plea. The Court holds that Petitioner's testimony was credible.

Therefore, the Court holds that Attorney Nelson's performance fell far below an acceptable standard for effective assistance of counsel, and that his ineffectiveness prejudiced Petitioner. Accordingly, applying *Strickland*'s two-pronged test,

Petitioner was denied the effective assistance of trial counsel. The Michigan Supreme Court's order affirming the conviction, therefore, was unreasonable and Petitioner is entitled to habeas corpus relief.

## C. Ineffective Assistance of Appellate Counsel

■ Petitioner also claims that his appellate counsel, Lawrence R. Greene, rendered constitutionally ineffective assistance. The Court grants habeas corpus relief with respect to this claim.

As discussed *supra*, the last state court to address the merits of Petitioner's ineffective assistance of counsel claims denied them in a conclusory one-sentence statement. *See People v. Morse*, No. 90–42746, slip op. at 4. Therefore, this Court conducts an independent review of Petitioner's ineffective assistance of appellate counsel claim. *Harris*, 212 F.3d at 942.

The Court holds that Attorney Greene's conduct was so unacceptable that he in no way subjected Petitioner's conviction to meaningful adversarial testing. In his first brief with the Michigan Court of Appeals, Attorney Greene presented a single claim for review, a sentencing issue. Not only did Attorney Greene fail to present the meritorious ineffective assistance of counsel claim in that brief, he also relied upon invalid case law to support the one claim he did raise. In that brief, filed on November 29, 1990, Attorney Greene argued that Petitioner's sentence was not individualized as required by *People v. Coles*, 417 Mich. 523, 339 N.W.2d 440 (1983). However, at the time Attorney Greene filed that brief, *Coles* was no longer controlling authority on that issue. On September 11, 1990, the Michigan Supreme Court decided *People v. Milbourn*, 435 Mich. 630, 461 N.W.2d 1 (Mich.1990), which introduced the principle of proportionality as the standard governing review of sentencing issues.

Between September 11, 1990, the date when the *Milbourn* decision was issued, and November 29, 1990, the date Attorney Greene submitted his appeal brief relying upon the invalid *Coles* standard, the Michigan Supreme Court and Michigan Court of Appeals published at least 37 cases citing the new standard established in *Milbourn*. Yet, in his motion to file a supplemental brief, Attorney Greene claimed that at the time his original brief was filed "the *Milbourn* decision had not yet been received by this office." Motion to File Supplemental Brief at 2.

Attorney Greene filed a Motion to Permit Supplemental Brief in the Michigan Court of Appeals on May 21, 1991, so that he could address the standard established in *Milbourn*. Thus, not only did Attorney Greene fail to cite the *Milbourn* standard in his original brief when that standard already had been cited in no fewer than 37 published opinions, he then waited an additional six months to attempt to supplement his brief with the proper standard. During that six-month period, an additional 22 published Michigan Supreme Court and Michigan Court of Appeals cases addressed this new standard. It is therefore inexcusable that Attorney Greene remained unaware of the *Milbourn* decision until over eight months after it was issued and after it had been cited in at least 59 published state court decisions.

Moreover, in addition to filing an essentially useless brief in the Michigan Court of Appeals, Attorney Greene's only other action on behalf of his client was to file a motion to remand in the Michigan Court of Appeals. Attorney Greene's brief requested a remand for a *Ginther* hearing based on the claim that trial counsel was ineffective. His argument in support of the motion was, in total, three sentences, and was devoid of any supporting legal authority or citations to the record:

1. . . . Appellant believes that Counsel who represented him at his hearing in the Circuit Court was ineffective.

2. That the Appellant further contends that Counsel coerced him into pleading

guilty based upon the promise that he would either receive probation or, at the most, a term of one (1) to five (5) years of incarceration.

3. That the Appellant did not understand the basis of his plea when it was entered due to his diminished capacity caused by the use of drugs.

Motion to Remand, pp. 1–2 (Aug. 29, 1991).

The Michigan Court of Appeals denied the skeletal motion without prejudice to Petitioner's right to present the issue in the appropriate motion in the trial court. *People v. Morse*, No. 131309 (Mich.Ct.App. Oct. 4, 1991). However, Attorney Greene failed to file a motion in the trial court requesting a *Ginther* hearing.

Thus, Attorney Greene effectively abandoned his client's cause. His appellate brief presented a single issue which was based entirely upon invalid Michigan case law. When he finally filed a motion to remand to present the ineffective assistance of counsel claim to the trial court, his brief was devoid of any supporting case law or facts. His brief was no better, and perhaps much worse, than that which Petitioner likely could have filed had he been proceeding *pro se*. Indeed, the brief does not evidence that it was written by someone with a formal legal education. Moreover, after the Michigan

Court of Appeals denied the motion without prejudice to Petitioner's right to present the issue in the appropriate motion in the trial court, Attorney Greene failed to pursue this valid claim. Given such an obvious, complete and indefensible failure to present any of Petitioner's claims on appeal, Petitioner was constructively denied the right to counsel on appeal.[5] Therefore, pursuant to *Cronic*, prejudice is presumed. Thus, the Michigan Supreme Court's decision affirming Petitioner's conviction was an unreasonable application of clearly established Supreme Court precedent and Petitioner is entitled to habeas corpus relief.

Moreover, Petitioner also has established that Attorney Greene's ineffective assistance prejudiced him. This Court has held that Petitioner's trial counsel was ineffective. Therefore, Attorney Greene's failure properly to raise this valid claim on appeal prejudiced Petitioner. Thus, even if prejudice were not presumed, Petitioner has shown actual prejudice and is, accordingly, entitled to habeas corpus relief with respect to this claim.

### D. *Actual Absence of Counsel*

 A defendant has an absolute right to be represented by counsel on his first appeal of right from his conviction. *Douglas v. California*, 372 U.S. 353, 356,

---

5. The Court notes that Michigan's Attorney Grievance Commission also held that Attorney Greene's representation, both of Petitioner, specifically, and of other defendants, in general, was inadequate. Petitioner filed a grievance with the Michigan Attorney Grievance Commission regarding Attorney Greene's conduct, including his apparent obliviousness to the seminal *Milbourn* decision. The Attorney Grievance Commission admonished Attorney Greene for his failure to adequately research issues before filing an appellate brief in violation of M.C.R. 9.104(1)-(4); and Michigan Rules of Professional Conduct 1.1(a)-(c); 1.3, and 8.4(a) and (c). *See* April 24, 1994 Letter from Attorney Grievance Commission to Attorney Greene, attached as exhibit to Petition for Writ of Habeas Corpus.

In addition, on January 28, 1993, Michigan's Appellate Defender Commission re-

moved Attorney Greene from the statewide appellate assigned counsel roster. The Commission made the following findings in support of its decision:

... [S]ubstantial and repeated violations of the Minimum Standards have occurred. Mr. Greene accepted a high volume of cases, failed to follow correct procedures in seeking applications within the appropriate time limits, failed to interview or visit clients in a timely fashion while representing them on appeal, filed "canned briefs" raising the same argument in many cases, and failed to raise meritorious issues and present facts as an advocate for his clients

...

Findings of Appellate Defender Commission, Jan. 28, 1993, attached as exhibit to Petition for Writ of Habeas Corpus.

83 S.Ct. 814, 9 L.Ed.2d 811 (1963); *Penson v. Ohio,* 488 U.S. 75, 83–83, 109 S.Ct. 346, 102 L.Ed.2d 300 (1988). The United States Supreme Court has held that "[t]he need for forceful advocacy does not come to an abrupt halt as the legal proceeding moves from the trial to the appellate stage. Both stages of the prosecution, although perhaps involving unique legal skills, require careful advocacy to ensure that rights are not forgone and that substantial legal and factual arguments are not inadvertently passed over." *Penson,* 488 U.S. at 85, 109 S.Ct. 346. Petitioner was denied the right to counsel while his appeal was pending before the Michigan Court of Appeals.

Attorney Greene was appointed to represent Petitioner on his appeal of right to the Michigan Court of Appeals. On September 10, 1991, Attorney Greene filed in the Genesee County Circuit Court a Motion to Be Relieved as Counsel. That motion was granted on October 21, 1991.[6] Petitioner's appeal remained pending until November 1, 1991, when the Michigan Court of Appeals affirmed his conviction. *People v. Morse,* No. 131309 (Mich.Ct.App. Nov. 1, 1991). There is no indication that Petitioner knowingly waived his right to counsel, that he concurred in Attorney Greene's withdrawal, or that he was ever even advised that counsel had filed a motion to withdraw. Moreover, the record before the Court indicates that substitute counsel was never appointed.

Therefore, from the date Attorney Greene's motion was granted until the Michigan Court of Appeals issued its opinion affirming Petitioner's conviction, Petitioner was without counsel.

■ Where a petitioner is denied counsel on appeal in contrast to a claim that counsel was ineffective, "it is . . . inappro-priate to apply either the prejudice requirement of *Strickland* or the harmless-error analysis of *Chapman [v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967) ]." *Id.* at 88. Where a petitioner was denied counsel altogether the petitioner need not prove that he was prejudiced by counsel's performance. *U.S. v. Cronic,* 466 U.S. 648, 659, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984).

Therefore, Petitioner's absence of counsel on appeal establishes a Sixth Amendment violation of his right to counsel.

## VI. *Voluntariness of Guilty Plea*

■ Petitioner next contends that his guilty plea was not knowing and voluntary because he did not know that he was pleading guilty to over 50 grams of cocaine and because he did not understand the true nature of the plea bargain.

The last state court to address the merits of Petitioner's claim that his guilty plea was invalid, the Genesee County Circuit Court, held as follows:

> The court has already held an evidentiary hearing on the issue of the voluntariness of defendant's plea. The Court concluded it was freely, voluntarily and understandingly entered into by defendant. Defendant does not establish that a different result should be reached at this point. Defendant has failed in his burden of establishing that it would be manifestly injust [sic] in allowing his guilty plea to stand.

*People v. Morse,* No. 90–42746, slip op. at 4.

This Court holds that the Genesee County Circuit Court's decision was an unreasonable application of Supreme Court precedent. The Supreme Court has

---

6. The trial court's decision to grant Attorney Greene's Motion to be Relieved as Counsel is reflected in Appendix B to Respondent's Answer in Opposition to Petition for Writ of Habeas Corpus. Appendix B is a copy of Attorney Greene's Notice of Hearing regarding the Motion to be Relieved as Counsel. At the bottom of that notice is a handwritten note indicating that the motion was heard and granted on October 21, 1991. Given that neither Petitioner nor Respondent disputes the accuracy of that date or disposition as reflected in the handwritten notation, the Court accepts it as accurate.

held that, to be valid, a guilty plea must be made voluntarily and intelligently. *Brady v. U.S.*, 397 U.S. 742, 748–49, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970). The plea must be made "with sufficient awareness of the relevant circumstances and likely consequences." *Id.* at 748, 90 S.Ct. 1463. The voluntariness of a plea "can be determined only by considering all of the relevant circumstances surrounding it." *Id.* at 749, 90 S.Ct. 1463.

This Court has determined that Attorney Nelson was so impaired by his alcohol abuse and mental illness at the time he was representing Petitioner that he could not function as the counsel guaranteed by the Sixth Amendment. Petitioner, therefore, entered a guilty plea, which he has testified he did not understand, without the aid of competent counsel. Such a plea cannot have been made voluntarily and intelligently.

At the conclusion of the evidentiary hearing before this Court, Respondent argued that the Sixth Circuit Court of Appeals' decision in *Ramos v. Rogers*, 170 F.3d 560 (6th Cir.1999), *cert. denied* —— U.S. ——, 120 S.Ct. 121, 145 L.Ed.2d 102 (1999), binds Petitioner to his testimony during the plea hearing. Respondent further argued that this Court therefore cannot consider Petitioner's later statements regarding his understanding of the plea agreement as evidence that the plea had not been made knowingly and voluntarily. *Ramos* is inapposite. First, *Ramos* involved a petitioner's failure to reveal an off-the-record plea agreement. *Id.* at 564. In the pending case, Petitioner does not claim that there was an off-the-record plea agreement, he instead asserts that he was confused during the plea hearing and that the confusion was induced by his attorney's incompetence.

Second, to the extent that *Ramos* is applicable to the present case, it does not preclude habeas corpus relief. *Ramos* recognizes that where a petitioner demonstrates "extraordinary circumstances" for failing to reveal additional terms of a plea agreement, the failure to reveal those terms will be excused. *Id.* The Sixth Circuit further recognized the ineffective assistance of counsel as an extraordinary circumstance. *Id.* This Court has held that Petitioner Morse was denied effective assistance of counsel. Therefore, he has satisfied the requirement set forth in *Ramos*. Moreover, Petitioner testified that, during the plea hearing, he was answering the court's questions as directed by his attorney. It would be patently unfair to bind a prisoner to statements made on the advice of counsel when counsel so clearly was unfit to render anything resembling assistance to his client. Thus, the Sixth Circuit's opinion in *Ramos* does not bar relief in this case.

Accordingly, the Court determines that because Petitioner was deprived of his Sixth Amendment right to the effective assistance of counsel, his guilty plea was not knowingly and voluntarily made. He is thus entitled to habeas corpus relief with respect to this claim.

## VII. *Double Jeopardy Claim*

 Petitioner claims that he is entitled to habeas corpus relief because his conviction violates his constitutionally protected right to be free from double jeopardy. Specifically, Petitioner argues that his double jeopardy rights were violated because certain of his property was seized pursuant to Michigan's civil forfeiture proceedings and he was then sentenced to prison in state court for the same crime. However, civil forfeitures do not constitute punishment for purposes of the double jeopardy clause. *See United States v. Ursery*, 518 U.S. 267, 116 S.Ct. 2135, 135 L.Ed.2d 549, (1996). Accordingly, Petitioner is not entitled to relief with respect to this claim.

## VIII. *Motion for Bond*

Petitioner has filed a Motion for Bond Pending Resolution of Petition for Writ of Habeas Corpus. During the interim peri-

od between the petitioner filing the motion and the Court issuing its Opinion, Petitioner Morse has been conditionally released from prison. Accordingly, the Court determines that Petitioner's Motion for Bond is now moot. Petitioner may renew his motion should his parole be revoked.

## IX. *Conclusion*

For the foregoing reasons, **IT IS ORDERED** that a writ of habeas corpus is **GRANTED**. Unless a date for a new trial is scheduled within ninety days, Petitioner Morse must be unconditionally released at that time.