**AFFIRM; Opinion Filed October 25, 2019**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-19-00700-CV

### IN THE INTEREST OF K.B., A CHILD

**On Appeal from the 304th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. JC-18-00004-W**

# MEMORANDUM OPINION
Before Justices Myers, Molberg, and Carlyle
Opinion by Justice Carlyle

In this suit affecting the parent–child relationship, Mother (1) challenges the sufficiency of the evidence to support the trial court's order terminating her parental rights to her son K.B. and (2) asserts she was denied effective assistance of counsel in the trial court. We affirm in this memorandum opinion. *See* TEX. R. APP. P. 47.4.

## I. Background

On K.B.'s date of birth, December 22, 2017, the Texas Department of Family and Protective Services received a referral alleging "neglectful supervision" of K.B. and "mental instability and erratic behaviors" by Mother. The Department began an investigation. Several days later, the Department received another neglectful supervision referral and a report that K.B.'s meconium tested positive for marijuana. The Department removed K.B. from Mother, placed him in foster care, and filed this lawsuit seeking conservatorship of K.B. and termination of Mother's

parental rights.[1] Mother filed a general denial answer and counterclaimed for managing conservatorship of K.B.

The Department prepared a January 12, 2018 service plan that required Mother to complete drug testing, counseling, and a psychiatric evaluation in order to be reunited with K.B. In late November 2018, the parties signed a mediated settlement agreement (MSA) granting Mother a 180-day monitored return of K.B. On April 11, 2019, the Department again removed K.B. from Mother and placed him in foster care. In an "Affidavit in Support of Removal," a Department caseworker repeated the allegations described above and stated that on April 10, 2019, she "received a call from previous kinship caregiver, Tonya Anthony," who told her Mother "was arrested for assault causing a bodily injury."

The trial court held a May 20, 2019 bench trial. A Department caseworker testified this case was originally filed "due to the concerns that [Mother] had some mental health issues" and "also [K.B.'s] meconium tested positive for marijuana." The caseworker stated (1) at the time K.B. was first removed, Mother "was excessively scrubbing the baby and assuming that there was something wrong with him and taking his temperature, like, every 30 minutes"; (2) Mother "ended up getting to a position where the Department believed that a monitored return would be sufficient"; and (3) during the monitored return, Mother violated MSA provisions that required her to continue counseling services and maintain daycare for K.B.; failed to demonstrate she complied with taking her medication; and, in K.B.'s presence, assaulted a neighbor who was babysitting for K.B., which resulted in Mother being jailed and K.B. being returned to his previous foster caregiver, Anthony. The Department offered into evidence an "affidavit" by a staff member of the facility where Mother was living at the time of K.B.'s birth describing Mother's "unstable"

---

[1] The Department also successfully sued to terminate the parental rights of K.B.'s father, who is described in the record as "Joe Unknown." He is not a party to this appeal.

and "concerning" behavior at that time. That exhibit was admitted into evidence without objection. On cross-examination, Mother's counsel asked the Department caseworker if she was "requesting the Court take judicial knowledge of the contents of [K.B.'s] file." The caseworker answered "yes." Additionally, (1) Anthony testified she is K.B.'s current caregiver and would like to adopt K.B. if Mother's rights are terminated; (2) the Department caseworker testified adoption by Anthony is in K.B.'s best interest; (3) K.B.'s guardian ad litem testified termination of Mother's parental rights is in K.B.'s best interest; and (4) Mother's neighbor testified that while babysitting K.B. on approximately December 19, 2018, she was physically assaulted by Mother in K.B.'s presence and Mother "was the aggressor in that altercation." Mother appeared at trial through counsel but was not present in person.[2]

The trial court signed a June 7, 2019 termination order in which it stated it found by clear and convincing evidence that terminating Mother's parental rights was in K.B.'s best interest and Mother had (1) "knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child, pursuant to § 161.001(b)(1)(D), Texas Family Code"; (2) "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child, pursuant to § 161.001(b)(1)(E), Texas Family Code"; and (3) "failed to comply with the provisions of court order that specifically established the actions necessary for the mother to obtain the return of the child who has been in the permanent or temporary managing conservatorship of [the Department] for not less than nine months as result of the child's removal from the parent . . . for the abuse or neglect of the child, pursuant to § 161.00(b)(1)(O), Texas Family Code."

## II. Evidentiary sufficiency

---

[2] The record shows Mother was released from jail prior to the May 20, 2019 trial date.

A trial court may terminate the parent–child relationship if it finds by clear and convincing evidence (1) one or more statutory grounds for termination enumerated in the Texas Family Code and (2) termination is in the child's best interest. TEX. FAM. CODE § 161.001(b)(1)–(2). "Clear and convincing evidence" is that "measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *In re N.G.*, 577 S.W.3d 230, 235 (Tex. 2019) (per curiam) (quoting FAM. § 101.007).

On appeal, we apply a standard of review that reflects the elevated burden at trial. *In re A.B.*, 437 S.W.3d 498, 502 (Tex. 2014); *In re A.T.*, 406 S.W.3d 365, 370 (Tex. App.—Dallas 2013, pet. denied). This means both legal and factual sufficiency review of an order terminating parental rights require a reviewing court to consider all the evidence to determine whether the factfinder could reasonably form a firm belief or conviction that the grounds for termination are proven. *See In re J.F.C.*, 96 S.W.3d 256, 265–66 (Tex. 2002); *In re L.E.H.*, No. 05-18-00903-CV, 2018 WL 6839565, at *4 (Tex. App.—Dallas, Dec. 31, 2018, no pet.) (mem. op.). The distinction between legal and factual sufficiency lies in the extent to which disputed evidence contrary to a finding may be considered. *In re A.C.*, 560 S.W.3d 624, 630 (Tex. 2018). In conducting a legal-sufficiency review, the reviewing court cannot ignore undisputed evidence contrary to the finding, but rather must otherwise assume the factfinder resolved disputed facts in favor of the finding. *Id.* at 630–31. Thus, in cases requiring the clear-and-convincing burden, evidence is legally sufficient if, viewing all the evidence in the light most favorable to the fact finding and considering undisputed contrary evidence, a reasonable factfinder could form a firm belief or conviction that the finding was true. *Id.* at 631. Factual sufficiency requires weighing disputed evidence contrary to the finding against all the evidence favoring the finding. *Id.* In a factual-sufficiency review, the appellate court must consider whether disputed evidence is such that a reasonable factfinder could not have resolved it in favor of the finding. *Id.* Thus, in cases requiring the clear-and-convincing

burden, evidence is factually insufficient if, in light of the entire record, the disputed evidence a reasonable factfinder could not have credited in favor of a finding is so significant that the factfinder could not have formed a firm belief or conviction that the finding was true. *Id.*

Section 161.001(b)(1)'s termination grounds include, among other things, (1) knowingly placing or knowingly allowing the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child, *see* FAM. § 161.001(b)(1)(D), and (2) engaging in conduct or knowingly placing the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child, *see id*. § 161.001(b)(1)(E). Because an order terminating a parent's rights under subsection (D) or (E) can be used as a basis to terminate the parent's rights to another child under subsection 161.001(b)(1)(M), terminating rights under (D) or (E) has "significant" collateral consequences. *In re N.G.*, 577 S.W.3d at 234; FAM. § 161.001(b)(1)(M). Therefore, "due process requires an appellate court to review and detail its analysis as to termination of parental rights under section 161.001(b)(1)(D) or (E) of the Family Code when challenged on appeal." *In re Z.M.M.*, 577 S.W.3d 541, 543 (Tex. 2019) (per curiam).

Subsections (D) and (E) both require proof of endangerment. "Endanger" means to expose to loss or injury or to jeopardize a child's emotional or physical health, but it is not necessary that the conduct be directed at the child or that the child actually suffer an injury. *In re J.D.B.*, 435 S.W.3d 452, 463 (Tex. App.—Dallas 2014, no pet.); *In re L.E.H.*, 2018 WL 6839565, at *5 (citing *In re Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987)). The primary distinction between the two subsections is the source of the physical or emotional endangerment to the child. *See In re J.D.B.*, 435 S.W.3d at 463. Subsection (D) addresses the child's surroundings and environment while subsection (E) addresses parental misconduct. *Id*. Parental conduct, however, is relevant to the child's environment under subsection (D). *In re K.J.*, No. 05-18-00624-CV, 2018 WL 5730167, at *2 (Tex. App.—Dallas Nov. 2, 2018, no pet.) (mem. op.) (citing *In re*

*J.D.B.*, 435 S.W.3d at 463). That is, "[c]onduct of a parent or another person in the home can create an environment that endangers the physical and emotional well-being of a child as required for termination under subsection (D)." *In re J.D.B.*, 435 S.W.3d at 463 (quoting *Castaneda v. Tex. Dep't of Protective & Regulatory Servs.*, 148 S.W.3d 509, 522 (Tex. App.—El Paso 2004, pet. denied)). Inappropriate, abusive, or unlawful conduct by persons who live in the child's home is part of the "conditions or surroundings" of the child's home under subsection (D). *Id.* (citing *In re M.R.J.M.*, 280 S.W.3d 494, 502 (Tex. App.—Fort Worth 2009, no pet.) ("A child is endangered when the environment creates a potential for danger that the parent is aware of but disregards.")).

"Termination under section 161.001(b)(1)(E) must be based on more than a single act or omission; a voluntary, deliberate, and conscious course of conduct by the parent is required." *In re K.S.*, No. 05-15-01294-CV, 2016 WL 1613126, at *14 (Tex. App.—Dallas Apr. 21, 2016, pet. denied) (mem. op.) (internal quotations omitted). In determining whether a parent engaged in a course of "endangering" conduct, a trial court may consider conduct that occurred before and after the child's birth, in the child's presence and outside the child's presence, and before and after removal by the Department. *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009).

Termination must be in the best interest of the child. FAM. § 161.001(b)(2). The supreme court has identified a nonexclusive list of factors that may be relevant to a best interest determination, depending on the facts: (1) the child's desires, (2) the child's current and future emotional and physical needs, (3) current and future emotional and physical dangers to the child, (4) the parental abilities of those seeking custody, (5) the programs available to help those individuals promote the child's best interest, (6) those individuals' plans for the child, (7) the home's or proposed placement's stability, (8) the parent's acts or omissions indicating that the existing parent–child relationship is not a proper one, and (9) any excuse for the parent's acts or omissions. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). Evidence that supports a

section 161.001(b)(1) termination ground may also be probative of the best interest of the child. *See In re E.C.R.*, 402 S.W.3d 239, 249 (Tex. 2013); *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002). An absence of evidence of some *Holley* factors does not preclude a finding that termination is in the child's best interest, particularly if undisputed evidence shows the parental relationship endangered the child's safety. *In re N.T.*, 474 S.W.3d 465, 477 (Tex. App.—Dallas 2015, no pet.). Although there is a strong presumption that maintaining the parent–child relationship serves the child's best interest, there is also a presumption that promptly and permanently placing the child in a safe environment is in the child's best interest. *In re D.W.*, 445 S.W.3d 913, 925 (Tex. App.— Dallas 2014, pet. denied).

### A. Statutory termination grounds

We begin with Mother's second issue, in which she contends the evidence was legally and factually insufficient to support terminating her parental rights under family code subsections 161.001(b)(1)(D), (E), or (O).

As to subsection (D), Mother argues (1) "[n]o testimony is supported by police reports or criminal records that may have been related to the circumstances between [the neighbor in the altercation described above] and Mother"; (2) "[s]ubsection (D) is not a basis for terminating parental rights if the parent was unaware of the endangering environment"; (3) "[t]he evidence does not lead to a reasonable inference that Mother should have had an awareness of the potential for an altercation"; and (4) the evidence "does not show that [Mother] knowingly placed her one-year old at a place, a babysitter's home, where the child's emotional or physical health was going to be jeopardized." The record shows Mother physically assaulted a babysitter in K.B.'s presence, "was the aggressor in that altercation," and was jailed as a result. Nothing in the record shows Mother was "unaware" of her conduct in assaulting the babysitter in K.B.'s presence. We conclude the evidence is legally and factually sufficient to support a finding that Mother's conduct created

an environment that endangered K.B.'s physical and emotional well-being. *See In re J.D.B.*, 435 S.W.3d at 463; *In re M.R.J.M.*, 280 S.W.3d at 502.

As to subsection (E), Mother argues (1) termination under that subsection requires "a conscious course of conduct" and (2) the course-of-conduct requirement was not met "because the Department wanted termination based on the incident with the babysitter." The Department's petition asserted Mother has committed at least one of the acts and omissions in section 161.001(b)(1). At trial, a Department caseworker testified (1) this case was originally filed "due to the concerns that [Mother] had some mental health issues" and "also [K.B.'s] meconium tested positive for marijuana," and (2) during the monitored return, Mother violated MSA provisions that required her to continue counseling services and maintain daycare for K.B.; failed to demonstrate she complied with taking her medication; and, in K.B.'s presence, assaulted a neighbor who was caring for K.B., which resulted in Mother being jailed. We conclude the evidence is legally and factually sufficient to support a finding that Mother consciously engaged in a course of conduct that had the effect of endangering K.B.'s physical or emotional well-being. *See In re L.E.H.*, 2018 WL 6839565, at *5 (concluding evidence of Father's drug use and violence against child's mother supported subsection (E) termination of Father's parental rights). In light of our conclusions regarding subsections (D) and (E), we need not reach Mother's arguments regarding subsection (O). *See In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003) (explaining that only one § 161.001(b)(1) ground is required for parental rights termination).

## B. Child's best interest

Next, we address Mother's first issue, in which she contends the evidence was legally and factually insufficient to support the trial court's finding that termination was in K.B.'s best interest. Mother argues (1) "before trial, except for the incident with the babysitter, the Department was aware that Mother had a safe and stable home, was financially capable of providing food, clothing

and shelter; was not using drugs; and had been proactive enough reunify with her son"; (2) "[n]othing is provided from the record that could lead to a reasonable conclusion that from the incident with the babysitter, Mother had gone back to her old ways that were prominent at the beginning of the case"; (3) "[i]t is more reasonable to conclude from the record that this incident that occurred with the neighbor was a one-time event, not a pattern"; and (4) the first, second, fourth, sixth, and seventh *Holley* factors are "favorable to Mother."

The first *Holley* factor, the child's desires, is neutral here, as K.B. was less than two years old at the time of trial and was too young to testify. *See In re A.C.*, 394 S.W.3d 633, 643 (Tex. App.—Houston [1st Dist.] 2012, no pet.) ("The young age of the child render[s] consideration of the child's desires neutral."). The second, third, fourth, seventh, and eighth *Holley* factors are all related in this best interest analysis. Those factors are the child's current and future emotional and physical needs, the current and future emotional and physical dangers to the child, the parental abilities of those seeking custody, the home's or proposed placement's stability, and the parent's acts or omissions indicating that the existing parent–child relationship is not a proper one.

Mother exposed K.B. to marijuana while he was in utero and exhibited "unstable" and "concerning" behavior immediately after his birth. During the monitored return, Mother violated MSA provisions that required her to continue counseling services and maintain daycare for K.B.; failed to demonstrate she complied with taking her medication; and was jailed for assaulting K.B.'s babysitter. The Department returned K.B. to his previous foster caregiver, Anthony, who sought to adopt him. A Department caseworker testified adoption by Anthony was in K.B.'s best interest. We conclude the second, third, fourth, seventh, and eighth *Holley* factors weigh in favor of termination. *See In re D.K.J.J.*, No. 01-18-01081-CV, 2019 WL 2455623, at *17 (Tex. App.—Houston [1st Dist.] Jun. 13, 2019, no pet.) (mem. op.) (stating that mother's noncompliant actions while case was pending and with knowledge that her parental rights were in jeopardy weighed

heavily in favor of trial court's best interest finding against her). As to the fifth, sixth, and ninth *Holley* factors, there is no evidence in the record of programs available to help promote K.B.'s best interest, Mother's plans for K.B., or any excuse for Mother's acts or omissions. *See Holley*, 544 S.W.2d at 371–72. "[E]vidence of a recent turnaround in behavior by the parent does not totally offset evidence of a pattern of instability and harmful behavior in the past." *Smith v. Tex. Dep't of Protective & Regulatory Servs.*, 160 S.W.3d 673, 681 (Tex. App.—Austin 2003, no pet.) (citing *In re M.G.D.*, 108 S.W.3d 508, 513–14 (Tex. App.—Houston [14th Dist.] 2003, pet. denied)). On this record, we conclude the evidence is legally and factually sufficient to support a finding that terminating Mother's parental rights was in K.B.'s best interest.

### III. Ineffective assistance of counsel

In Texas, an indigent parent has a statutory right to appointed counsel in a parental-rights termination case. FAM. § 107.013(a)(1); *In re M.S.*, 115 S.W.3d 534, 544 (Tex. 2003); *In re S.B.*, No. 02-18-00310-CV, 2019 WL 1388760, at *15 (Tex. App.—Fort Worth Mar. 28, 2019, pet. denied) (mem. op.). Because it would be a useless gesture to recognize by statute the importance of counsel in termination proceedings yet not require that counsel perform effectively, this statutory right "embodies the right to effective counsel." *In re M.S.*, 115 S.W.3d at 544; *see also In re B.G.*, 317 S.W.3d 250, 253–54 (Tex. 2010). In evaluating claims of ineffective assistance of counsel in a termination case, we apply the two-pronged standard applicable to criminal cases set out in *Strickland v. Washington*, 466 U.S. 668 (1984). *See In re J.O.A.*, 283 S.W.3d at 341–42; *In re M.S.*, 115 S.W.3d at 544–45. To show ineffective assistance of counsel under *Strickland*, a parent has the burden to show (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defense in a manner so serious as to deny the parent a fair and reliable trial. *In re J.O.A.*, 283 S.W.3d at 342 (citing *In re M.S.*, 115 S.W.3d at 545); *see also Strickland*, 466 U.S. at 687.

"With respect to whether counsel's performance in a particular case is deficient, we must take into account all of the circumstances surrounding the case, and must primarily focus on whether counsel performed in a 'reasonably effective' manner." *In re M.S.*, 115 S.W.3d at 545 (citing *Strickland*, 466 U.S. at 687); *see also In re H.R.M.*, 209 S.W.3d 105, 111 (Tex. 2006). "[C]ounsel's performance falls below acceptable levels of performance when the 'representation is so grossly deficient as to render proceedings fundamentally unfair.'" *In re M.S.*, 115 S.W.3d at 545 (quoting *Brewer v. State*, 649 S.W.2d 628, 630 (Tex. Crim. App. 1983)). In conducting our review of trial counsel's performance, there is "'a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance,' including the possibility that counsel's actions are strategic." *Id.* (quoting *Strickland*, 466 U.S. at 689). Only when trial counsel's conduct was so outrageous that no competent attorney would have engaged in it will the challenged conduct constitute ineffective assistance. *Id.*

Under *Strickland*'s second prong, a parent must show trial counsel's deficient performance prejudiced his defense. *Id.*; *see also Strickland*, 466 U.S. at 687. To show prejudice, the parent must show there is reasonable probability that, but for counsel's error, the result of the proceeding would have been different. *In re M.S.*, 115 S.W.3d at 550; *see also Medellin v. Tex. Dep't of Family & Protective Servs.*, No. 03-11-00558-CV, 2012 WL 4466511, at *5 (Tex. App.—Austin Sept. 26, 2012, pet. denied) (mem. op.) (explaining that establishing prejudice requires showing "reasonable probability that [parent's] rights would not have been terminated" absent trial counsel's deficient performance).

A presumption of prejudice may be warranted where there has been actual or constructive denial of counsel. *United States v. Cronic*, 466 U.S. 648, 658–61 (1984); *In re S.B.*, 2019 WL 1388760, at *15. In such case, "[n]o specific showing of prejudice [is] required," because "the adversary process itself [is] presumptively unreliable." *Cronic*, 466 U.S. at 659. The presumption

–11–

of prejudice arises when there are "circumstances that are so likely to prejudice the [defendant] that the cost of litigating their effect in a particular case is unjustified." *Id*. at 658. This can occur when (1) the defendant is denied the presence of counsel at a critical stage of his trial, (2) counsel entirely fails to subject the prosecution's case to meaningful adversarial testing, or (3) circumstances at trial are such that, although counsel is available to assist the defendant during trial, the likelihood that any lawyer, even a fully competent one, could provide effective assistance is so small that a presumption of prejudice is appropriate without inquiry into the actual conduct of the trial. *Id*. at 659–60; *see also Bell v. Cone*, 535 U.S. 685, 695–96 (2002).

For *Cronic* to apply, "appointed counsel's failure to test the prosecution's case must be 'complete.'" *In re S.B.*, 2019 WL 1388760, at *15 (quoting *Bell*, 535 U.S. at 697). "In other words, the standards distinguish between 'shoddy representation' and 'no defense at all.'" *Id*. (quoting *Childress v. Johnson*, 103 F.3d 1221, 1229 (5th Cir. 1997)). "Bad lawyering, regardless of *how* bad, does not justify applying *Cronic*." *Id*. (cleaned up). "Accordingly, prejudice will be presumed only when the accused 'can establish that counsel was not merely incompetent but inert.'" *Id*. (quoting *Childress*, 103 F.3d at 1228).

In her third issue, Mother contends she was denied effective representation of counsel in the trial court. She asserts that at trial, her appointed counsel (1) failed to object to admissibility of the Department's exhibit, improper testimony by the Department caseworker, and testimony by two witnesses not listed on the witness list; (2) failed to address inconsistencies in the Department caseworker's testimony; (3) on cross-examination, asked the Department caseworker only one question, which pertained to a matter unhelpful to Mother's defense; (4) allowed the Department's other witnesses to be "continuously lead without challenges"; (5) failed to offer into evidence an April 9, 2019 Department report that described Mother's compliance with MSA requirements; and (6) failed to raise "reasonable defenses and affirmative relief requests" on Mother's behalf. Mother

contends "[t]hese occurrences at the trial illustrate that although [Mother's] counsel appeared . . . for trial there was no meaningful adversarial testing of the Department's case" and therefore we should presume prejudice. In support of that contention, she cites *In re K.B.*, No. 05-17-00428-CV, 2017 WL 4081815, at *8 (Tex. App.—Dallas Sept. 15, 2017, no pet.) (mem. op.).

Unlike the case before us, *In re K.B.* involved an appointed attorney who failed to appear at trial. Here, Mother complains of "trial counsel's alleged errors, omissions, or strategic decisions in [her] defense, i.e., incompetence." *In re G.H., Jr.*, No. 12-16-00327-CV, 2017 WL 2464694, at *3–4 (Tex. App.—Tyler Jun. 7, 2017, pet. denied) (mem. op.). We therefore decline to apply *Cronic*'s presumption of prejudice in this case. *Id.*; *see In re S.B.*, 2019 WL 1388760, at *15; *In re D.L.*, No. 12-16-00159-CV, 2016 WL 6876503, at *3 (Tex. App.—Tyler Nov. 22, 2016, no pet.) (mem. op.). The record does not support a conclusion that Mother was prejudiced. And, Mother does not address or explain how the record shows a "reasonable probability" that her parental rights would not have been terminated absent trial counsel's alleged deficient performance. *See In re M.S.*, 115 S.W.3d at 550. Therefore, we conclude Mother has not met her burden to satisfy *Strickland*'s second prong. *See id.* at 545; *see also Strickland*, 466 U.S. at 687.

We decide Mother's three issues against her and affirm the trial court's order.


/Cory L. Carlyle/
CORY L. CARLYLE
JUSTICE


190700F.P05

–13–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

IN THE INTEREST OF K.B., A CHILD

No. 05-19-00700-CV

On Appeal from the 304th Judicial District Court, Dallas County, Texas
Trial Court Cause No. JC-18-00004-W.
Opinion delivered by Justice Carlyle, Justices Myers and Molberg participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 25th day of October, 2019.